2001 WY 134

**Detlev Bill MUELLER, Jr., Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 00–211.**

Supreme Court of Wyoming.

Dec. 27, 2001.

1152

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Marion Yoder, Senior Assistant Public Defender. Argument by Ms. Yoder.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General. Argument by Mr. Elrod.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] Appellant, Detlev Bill Mueller (Mueller), was found guilty by a jury of two counts of felony interference with a police officer.[1] The district court entered judgment and sentence on that verdict imposing two consecutive sentences of 42–60 months of imprisonment. Mueller appeals from the district court's judgment and sentence con-

tending that the district court erred in refusing to give lesser-included offense instructions offered by him, that there was insufficient evidence of the crimes charged, and that the prosecutor engaged in misconduct during closing argument.

[¶ 2] We will reverse and remand to the district court for further proceedings consistent with this opinion.

## ISSUES

[¶ 3] Mueller raises these issues:

I. Did the trial court error [*sic*] in refusing to instruct on one or both lesser included offenses?

II. Was there sufficient evidence of Appellant's violation of each element of W.S. § 6–5–204(b)?

III. Was it proper for the prosecutor to misstate some of the evidence and the law on probable cause and unfairly comment upon the credibility of witnesses to the jury?

The State rephrases the issues thus:

I. Did the district court properly refuse Appellant's request for lesser-included offense jury instructions?

II. Are Appellant's convictions supported by sufficient evidence?

III. Has Appellant suffered any prejudice where the State's comments in closing argument were within the bounds of permissible argument and posed no substantial risk of a miscarriage of justice?

## FACTS

[¶ 4] The issues to be decided in this case are best understood if we begin our recitation of the operative facts with an acknowl-

---

1. Wyo. Stat. Ann. § 6–5–204 (LexisNexis 2001) states:

 **§ 6–5–204. Interference with peace officer; disarming peace officer; penalties.**
 (a) A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties.

 (b) A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years.
 (c) A person who intentionally and knowingly disarms a peace officer of his firearm while that peace officer is engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than five (5) years.

edgment that Mueller was, in some ways, a victim of mistaken identity. In addition, many facts are included here that relate primarily to our review of Mueller's claim that the evidence was insufficient to support his convictions and, hence, are presented in a light most favorable to the State (that standard does not apply to the issue of whether lesser-included offense instructions should have been given). At about 4:00 p.m. on September 10, 1999, Mueller was standing in the parking lot of the Yellowstone Motel in Casper when two police officers, clad in t-shirts and jeans and operating undercover so as to more readily fit into the drug culture, drove up, jumped out of their unmarked car, pointed their guns at Mueller and his companion, identified themselves as police officers, and told Mueller to get on the ground. Mueller's response was to say "f— you" and attempt to get away from the two men. After a struggle, the policemen eventually subdued Mueller. All of this occurred in about a minute or two.

[¶ 5] Now, we must reverse field to explain how Mueller ended up where he did. At the time of their encounter with Mueller, the policemen were looking for a man named Steve Spurlin (Spurlin). As part of an undercover drug operation, the police had identified Spurlin as a potential drug dealer. On September 2, 1999, a confidential informant had purchased methamphetamine from Spurlin and a woman named Altina Crenshaw (Crenshaw). On September 3, 1999, the police searched Spurlin's trailer (where the drug buy was made) and, amongst other things, seized methamphetamine. Crenshaw "cooperated" with the police in several unsuccessful drug buys, and also told police that Spurlin was involved with a woman named

Allyson Burkey (Burkey). Another informant told the police that Spurlin might have a gun, and the police considered him to be dangerous.

[¶ 6] The policemen had never really seen Spurlin up close, and they did not know what he looked like. On the date of Mueller's interaction with the policemen, they had decided to seek out Spurlin by trying to find Burkey. They also did not know what Burkey looked like, but they knew that she drove a blue Buell motorcycle and that Spurlin had received a call from the Yellowstone Motel, as the call was listed on his caller ID during the search of his trailer. With this information in hand, they drove by the Yellowstone Motel and spotted a blue Buell motorcycle parked outside one of the rooms.[2] Initially, they knocked on the door of the room, in front of which the motorcycle appeared to be parked, but there was no answer to their knock and, indeed, that was not the room that Burkey was in. The policemen then went to the motel office and attempted to find out what room Burkey was in, but the clerk would not give out that information (and Burkey was registered under an alias so the clerk did not recognize the name Burkey).[3] However, as they were leaving the motel office, a woman came out of a room near where the motorcycle was parked and got onto it. Mueller followed close behind and kissed[4] Burkey. The policemen were "pretty sure" Mueller was Spurlin.[5] The policemen did not plan on arresting Spurlin but rather were "checking it out." The policemen drove up at a high rate of speed in their car, so as to block Burkey's motorcycle, jumped out of their car, and "yelled rather loudly, so there's no mistake, police, get down on the ground." According to the po-

**2.** The record strongly suggests that at the time of the encounter with Mueller, the only thing the police knew for sure was that they recognized the blue motorcycle.

**3.** Painting in rather broad strokes, the police indicated they did not identify themselves as police officers because some motel clerks are given to tipping off criminals in some instances.

**4.** This is significant because the police viewed Burkey as Spurlin's "girl." As it turns out, Burkey was married and continues to be married to her husband, and she did have relationships with

Spurlin and with Mueller. The prosecution made much use of Burkey's lifestyle in attacking her credibility.

**5.** Again, painting in rather broad strokes, the police conceded that Mueller looked only vaguely similar to Spurlin (though they both fit a rather broad general description of a white male, with brown hair, five feet seven inches, 165 pounds), but in their view, the individual they saw was most likely Spurlin attempting to conceal his identity.

licemen, one officer was showing his badge and the other was not. The policemen repeated the command to get down on the ground several times, but Mueller did not comply: "Mr. Mueller just, he kind of scowled, he frowned like he was angry, and he started backing up and I remember him saying, why." One of the policemen testified that he determined that Mueller was not armed, that he did not fear that they were going to be seriously injured by Mueller, and so he did not use his firearm. As noted earlier, in the attempt to have "contact" or "check out" the situation with Spurlin, the policemen ordered Mueller to the ground. When Mueller did not obey, they attempted to subdue him, and in that attempt Mueller first struck one policeman and then the other. Mueller was charged with two counts of felony level resisting arrest. One policeman was struck on the head, and it caused him pain, a "headache," and the other was struck in the jaw, and he also testified that the blow caused his jaw to be sore for that evening and the next day.

[¶ 7] There were no direct eyewitnesses to the events described above other than the two policemen, and Mueller and Burkey. Mueller did not testify, and Burkey's testimony was equivocal about whether the policemen had identified themselves as policemen. The clerk at the motel witnessed portions of the episode. She missed a portion of what happened because she called 911 to report what she thought was an attempt by the policemen (whom she did not know were policemen) to rob Burkey and Mueller. Indeed, police and firemen responded to the call and arrived very shortly after Mueller was subdued. The motel clerk did not see the policemen show badges, did not hear them identify themselves as policemen, and did not see Mueller strike either policeman, though she conceded that she might not have been able to hear or see all that went on from her vantage point.

## DISCUSSION

### Lesser–Included Offense of Resisting Arrest (Misdemeanor)

[¶ 8] The pivotal issue in this case is whether the district court erred in refusing to give a lesser-included offense instruction with respect to misdemeanor resisting arrest. We include the pertinent statute for the sake of convenience:

**§ 6–5–204. Interference with peace officer; disarming peace officer; penalties**

(a) A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties.

(b) A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years.

Wyo. Stat. Ann. § 6–5–204(a) and (b) (LexisNexis 2001).

[¶ 9] The applicable standard of review is well-established: Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts, instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct, a failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, and the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed. *Schmidt v. State*, 2001 WY 73, ¶ 23, 29 P.3d 76, ¶ 23 (2001); *Metzger v. State*, 4 P.3d 901, 908 (Wyo.2000). With specific regard to lesser-included offense instructions, we recently held that a trial court must first determine if all the elements of the lesser offense are included within the greater. If that is the case and there is some evidence that would rationally permit the jury to find the accused guilty of the lesser and not the

greater offense, the instruction should be given. *Sanders v. State,* 7 P.3d 891, 894 (Wyo.2000) (citing *State v. Keffer,* 860 P.2d 1118, 1140, (Wyo.1993) (Cardine, J., concurring)). The test is more fully expressed in this five-step analytic process: (1) a proper request for the instruction is made; (2) the elements of the lesser-included offense are identical to part of the elements of the greater offense; (3) there is some evidence that would justify conviction of the lesser-included offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense; and (5) mutuality exists such that the lesser-included charge can be demanded by either the prosecution or the defense. When all five parts of this test are met, and the lesser-included offense instruction is not given, the trial court commits reversible error. *Eatherton v. State,* 761 P.2d 91, 94–95 (Wyo. 1988). Indeed, a trial court may, and sometimes should, give such an instruction without request from either party. *State v. Keffer,* 860 P.2d 1118, 1134–35 (Wyo.1993).

<span style="background:black"></span> [¶ 10] With respect to part one of the test, an instruction was requested. Mueller asked that the trial court give an instruction along the lines of the applicable Wyoming Criminal Pattern Jury Instruction 52.04A (and *see* W.Cr.P.J.I. 1.08):

> The elements of the crime of Interference with a Peace Officer, as charged in this case, are:
>
> 1. On or about the ___ day of ___, 199_[*sic*]
>
> 2. In _____ County, Wyoming
>
> 3. The Defendant _____
>
> 4. [Knowingly obstructed, impeded or interfered with] [Resisted arrest by] a peace officer

**6.** The pattern instruction is set out as follows:

> The elements of the crime of Interference with a Peace officer, as charged in this case, are:
>
> 1. On or about the ___ day of ___ 199_[*sic*]
> 2. In _____ County, Wyoming
> 3. The Defendant, _____

5. While that peace officer was engaged in the lawful performance of his official duties.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[¶ 11] The language of the instruction submitted to the trial court provided:

> The elements of the crime of resisting arrest, a lesser included offense of interference with a Peace officer, as charged in this case are:
>
> 1. On or about the 10th day of September, 1999
>
> 2. In Natrona County, Wyoming
>
> 3. The Defendant, Bill Mueller
>
> 4. Resisted arrest by a peace officer
>
> 5. While that peace officer was engaged in the lawful performance of his official duties.
>
> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[¶ 12] With respect to part two of the test, elements 1, 2, 3, and 5 of the lesser-included offense are identical to part of the elements of the greater offense. The instruction given the jury mirrors Wyoming Criminal Pattern Jury Instruction 52.04B: [6]

> 4. Intentionally and knowing [caused] [attempted to cause] bodily injury to a peace officer
> 5. While that peace officer was engaged in the lawful performance of his official duties.
> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

The elements of the crime of Interference with a Peace Officer, as charged in I, are:

1. On or about the 10th day of September, 1999

2. In Natrona County, Wyoming

3. The Defendant, Detlev Bill Mueller, Jr.

4. Intentionally and knowingly caused or attempted to cause [7] bodily injury to a peace officer namely, Mark Sellers

5. While that peace officer was engaged in the lawful performance of his official duties.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[¶ 13] The phrase, "bodily injury," set out in the fourth element is defined by statute and plays an important role in differentiating between the misdemeanor level of interference with a peace officer and the felony level of that same crime. As set out in Wyo. Stat. Ann. § 6–1–104(a)(i) (LexisNexis 2001), " 'Bodily injury' means physical pain, illness or any impairment of physical condition." Here, that definition applies only to the extent that "physical pain" was inflicted on the policemen.

[¶ 14] As can be readily deduced from a side-by-side reading, the elements are identical except that the greater offense requires that the defendant is required to have intended to inflict bodily injury on the peace officer (or to have attempted to do so), while the lesser offense only requires that the defendant has resisted the efforts of the peace officer to arrest him, without there having necessarily been an injury or an attempt to injure.

[¶ 15] With respect to part four of the test (the proof on the element or elements differentiating the two is sufficiently in dispute that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense), it is evident from the record that Mueller's view of the case was that he was assailed by two men who did not appear to be policemen, who did not identify themselves as policemen (or failed to make that sufficiently clear given an elapsed time of only 60 seconds), and that he had no intent to cause the policemen pain but rather reacted as many might, *i.e.*, attempting to flee two men pointing guns at him. Perhaps most importantly, both the motel clerk and Burkey testified that they did not see Mueller doing any "punching," and reasonable jurors might well conclude that injuries suffered by the policemen, as such,[8] were the result of a brief melee in which Mueller resisted arrest, rather than the result of intentional and knowing action to injure the men who may or may not have promptly identified themselves as policemen. The evidence was sufficiently in dispute so that the fact-finder should have been empowered to make the differentiation, if one was to be made. *See Walter v. State*, 811 P.2d 716, 717–18 (Wyo.1991).

---

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

**7.** Although it is not raised as an issue, and it plays no part in our resolution of this case, we take note that the jury instruction given in this regard contained both the theory that injury was actually caused and that an attempt was made to cause it. It is evident from the pattern instruction set out above that generally the prosecution and the trial court must elect between the causing of injury and the attempt to cause injury. If no election is made, then the jury is presented with two alternate theories, and the attempt theory requires additional instructions defining what attempt means. W.Cr.P.J.I., Part 11

**8.** Although it is not evident in the record, the presentence report indicates that neither police officer wanted to make a statement in their role as victims and that both "denied being hurt or requiring medical attention." Their testimony at trial with respect to pain was equivocal. When asked if they suffered, both responded in the affirmative but used the descriptive words "headache" and "sore jaw" which, in common parlance, may suggest something a level below "pain."

[¶ 16] As to the fifth part of the test, clearly, there is mutuality, especially in the sense that if the prosecution had requested such an instruction, it would have been given. Indeed, the State, in its exercise of discretion, might only have charged Mueller with the misdemeanor offense.

[¶ 17] Our conclusion is that the trial court committed reversible error in failing to instruct the jury as to the lesser-included offense, and it is necessary that the matter be remanded to the district court for a new trial or other appropriate proceedings.

**Lesser–Included Offense of Assault and Battery**

[¶ 18] Mueller also contends that a lesser-included offense instruction should have been given with respect to the offense of simple battery, as defined by Wyo. Stat. Ann. § 6–2–501(b) (LexisNexis 2001):

§ 6–2–501. **Simple assault; battery; penalties.**

(a) A person is guilty of simple assault if, having the present ability to do so, he unlawfully attempts to cause bodily injury to another.

(b) A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another.

(c) Except as provided by subsection (e) of this section, simple assault is a misdemeanor punishable by a fine of not more than seven hundred fifty dollars ($750.00).

(d) Except as provided by subsection (f) of this section, battery is a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both. Notwithstanding any other provision of law, the term of probation imposed by a judge under this subsection may exceed the maximum term of imprisonment established for the offense under this subsection provided the term of probation, together with any extension thereof, shall in no case exceed one (1) year.

(e) A household member as defined by W.S. 35–21–102 who is convicted upon a plea of guilty or no contest or found guilty of simple assault against any other household member, after having been convicted upon a plea of guilty or no contest or found guilty of a violation of W.S. 6–2–501(a), (b), (e) or (f), 6–2–502, 6–2–503, 6–2–504 or other substantially similar law of this or any other state, tribe or territory against any other household member, is guilty of a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both.

(f) A household member as defined by W.S. 35–21–102 who commits a second or subsequent battery against any other household member shall be punished as follows:

(i) A person convicted upon a plea of guilty or no contest or found guilty of a second offense under this subsection against any other household member, after having been convicted upon a plea of guilty or no contest or found guilty of a violation of W.S. 6–2–501(a), (b), (e) or (f), 6–2–502, 6–2–503, 6–2–504 or other substantially similar law of this or any other state, tribe or territory against any other household member within the previous five (5) years is guilty of a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both;

(ii) A person convicted upon a plea of guilty or no contest or found guilty of a third or subsequent offense under this subsection against any other household member, after having been convicted upon a plea of guilty or no contest or found guilty of a violation of W.S. 6–2–501(a), (b), (e) or (f), 6–2–502, 6–2–503, 6–2–504 or other substantially similar law of this or any other state, tribe or territory against any other household member within the previous ten (10) years is guilty of a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand dollars ($2,000.00), or both.

[¶ 19] Mueller offered this lesser-included offense instruction:

YOU ARE INSTRUCTED that the necessary elements of the lesser included offense of the crime of Battery are:

1. That on or about the 10th day of September 1999,

2. In the County of Natrona, and State of Wyoming,

3. The Defendant, Bill Mueller

4. Intentionally, Knowingly, or Recklessly and unlawfully;

5. Caused bodily injury to another person.

If you find from your consideration of all the evidence that any of these elements has not been proven beyond a reasonable doubt, then you should find the Defendant not guilty.

If, on the other hand, you find from your consideration of all the evidence that each of these elements has been proven beyond a reasonable doubt, then you should find the Defendant guilty.

[¶ 20] Applying the test set out above, an instruction was offered, but a side-by-side comparison readily reveals that part two of the test is not met. The elements of the lesser-included offense are identical to part of the elements of the greater offense. However, elements 4 and 5 do not require that the person be a peace officer, and we conclude that this difference is significant enough so that the identity factor is not met. The remaining elements are identical, but those relate only to non-substantive elements of the crime (date, place, and name of defendant). Another differentiating factor is that the battery statute appears in Chapter 2 of Title 6, which deals with the general subject of offenses against the person, whereas, interference with a peace officer appears in Chapter 5 of Title 6, which deals with a more specific subject matter, offenses against public administration. Thus, these two statutes vindicate two different and distinguishable interests of the State in exercising its police powers.

[¶ 21] The trial court did not err in refusing the proposed lesser-included offense instruction on battery.

## Sufficiency of the Evidence

[¶ 22] When addressing a claim that the evidence is not sufficient to sustain the conviction for a crime, we apply this standard: We assess whether all of the evidence which was presented was adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a fact-finder when that evidence is viewed in a light most favorable to the State. We will not substitute our judgment for that of the jury when we apply that rule, and our only duty is to determine whether a quorum of reasonable and rational jurors would, or even could, have come to the same result as the jury actually did in the case under review. *Robinson v. State*, 11 P.3d 361, 368 (Wyo.2000) (citing *Hodges v. State*, 904 P.2d 334, 339 (Wyo.1995)).

[¶ 23] Applying this standard to the evidence we have set out in detail above, we conclude that a reasonable and rational trier of fact could conclude that Mueller was guilty of either the greater or the lesser offenses defined by Wyo. Stat Ann. § 6–5–204(a) and (b), or have acquitted him.[9]

## Prosecutorial Misconduct in Closing Argument

[¶ 24] We need not discuss this issue in great detail since we reverse on other grounds. However, we will mention one specific instance that is troubling. The prosecutor presented this argument in rebuttal to defense counsel's proper argument that there was conflicting evidence with respect to what the police officers did, as well as what Mueller did, and that it was the jury's job to resolve those conflicts:

> MR. SILVA: Thank you, sir [addressing the Court]. Go ahead and look over there at Officer McFarland and say, bad cop, bad cop, bad cop. Officer McFarland, Officer Sellers, you guys are bad, bad cops.[10]

---

9. Since this matter may be retried before another jury, we include all three possibilities in our analysis, out of our desire that the prosecutor not argue to the jury that this Court has opined that Mueller is guilty.

10. We inject, to make ourselves perfectly clear, that we do not consider the policemen to have

That's the defense in this case. That they are bad, bad police officers. That they have done something here that is bad.

Is that what the evidence showed? What did the evidence show you? What did the evidence show you that they did? How did they treat Ms. Burkey? Did they treat Ms. Burkey bad? No, they didn't treat her badly. Nothing happened to Ms. Burkey, because she complied. Did they get Mr. Spurlin and properly get a search warrant and do everything that was required in regards to getting Mr. Spurlin, a medium level drug dealer as Officer McFarland testified? No, they did that absolutely right. They check out their information in regard to Mr. Mueller [*sic*, Spurlin intended], you better believe they did.

They found their information in the course of their performance as officers, through search warrants, through surveillance, they checked those things out. They found out that Ms. Allyson Burkey was at the motel. How? Because they went and asked Craig Burkey. They had a biographical [*sic*] description of Mr. Spurlin. How? From the personal observations and a CAD sheet.

They didn't shoot Mr. Mueller. That would be bad officers, that would be too provocative. Not bad officers. Bad defendant, bad Detlev Mueller. What does he do? He says, fuck you. That's what he says. And he takes off, and it isn't quick, you know. They are complaining that they didn't advise, they did not advise the defendant that there was a warrant,[11] that they were going to arrest him. This is quick, quick, quick. He says, fuck you, he takes off and he goes to fight.

And he's got a warrant for his arrest, for what? Eluding a police officer.[12] Big surprise he takes off and runs. Big surprise. Not bad police officers, bad defendant. The Defendant is on trial here today, not the police officers. The only way that you can find the Defendant not guilty is to believe that the police officers are lying.

Now, what evidence do you have that they are lying? They arrest the Defendant for a lie? They do all the paperwork that's required for a case like this for a lie? They come to court and sit in trial for two days for a lie? Officers that get search warrants and conduct surveillance and do wires on Steve Spurlin, that doesn't look like officers that would lie. Officers that when the Defendant is beaten up call the ambulance to help him. Is that officers that would lie? And he refuses treatment.

The way that they treated Ms. Burkey. Is that officers that would lie? Even in the way they treated Sandi McKenzie, they didn't tell her, no, we're not police officers. They didn't lie to her.[13] Nothing in this case shows that these officers did anything wrong. Also in this case—or back to the lie, something when you go back in the jury room you should think about, okay? Because if these officers are lying about this, they are not very good at it, okay? They are not good liars because what's a better lie? Now, let's think. What is smarter to do, to find out that the Defen-

been "bad." However, consistent with the instructions given this jury and the laws that govern this State and this nation, it is the role of the jury to resolve disputed factual issues—not the prosecutor or the courts.

**11.** Evidence was admitted that there was a misdemeanor arrest warrant outstanding for Mueller, but the policemen were unaware of that at the time they contacted Mueller. That warrant was admitted as evidence for the ostensible purpose of showing that Mueller had a motive to flee from the police, although there was no evidence that Mueller was aware of the existence of the warrant. The admissibility of that evidence is not raised as an issue in this appeal, and no objection was made to its admission below. It is

our view that the evidence, if offered again, must be carefully analyzed under W.R.E. 404(b) because its prejudicial effect may well outweigh its probative value, if any.

**12.** Although admitted to show motive, the argument is to the effect that he acted consistently with prior bad behavior of running from cops. The warrant was issued for eluding police when an attempt was made to stop Mueller for traffic violations.

**13.** No contention was made that the policemen lied in this regard, only that McKenzie, the motel clerk, did not know and was not informed, that they were policemen and, indeed, reported their activities as a possible crime.

dant has got a warrant for his arrest, okay?

If you're a liar you say, we were looking for Allyson Burkey in regard to Steve Spurlin. We went down to the motel, we got there because we saw on the caller ID a call from the Yellowstone Motel, Steve Spurlin's house. We go down there and we don't think we see Steve Spurlin, we don't have probable cause for Steve Spurlin. We think we see Detlev Mueller, and we know he has a warrant for his arrest. And that's who we go down there to arrest and that's when he becomes combative.

Now, if they wanted to lie to you, that's the lie they should tell. That's the lie they should tell. They can't defend that lie. That's the lie they should tell. But, no, they come in here and tell you the truth. Absolutely tell you the truth. And then they complain they didn't advise Mr. Mueller that they were arresting [14] him thinking they were Spurlin [*sic*]. I suppose Officer Sellers should have advised him when he got punched in the face.

MR. SMITH: You Honor, I don't think Mr. Silva should vouch for the credibility of any witness in the case.

MR. SILVA: Your Honor, I don't think I vouched for the credibility of anybody.

THE COURT: I think I know what the objection is. Let me handle it this way: Ladies and gentlemen, the credibility of the witnesses in this case is something for you to decide. To the extent that Mr. Silva was vouching for the credibility, he's stepping over the line.

As I heard it, he was arguing facts upon which you might consider the credibility, but I'll leave that up to you. You may proceed.

MR. SILVA: I would never do that. In fact, I would want you to base their credibility on the way they came up here and they testified. Base their credibility on the facts and circumstances of this case. Because in this case, Ladies and Gentlemen of the Jury, there is really no evidence that the Defendant did not do this.

All the witnesses' stories are consistent and they are credible.

[¶ 25] We can only conclude that the prosecutor was vouching for the credibility of his police witnesses. *See Harper v. State*, 970 P.2d 400, 403–5 (Wyo.1998); *Schmunk v. State*, 714 P.2d 724, 742–43 (Wyo.1986); and *Browder v. State*, 639 P.2d 889 (Wyo.1982). That is clear from the excerpt set out above. An objection was made, and so this error would not need to be evaluated under the plain error doctrine. The remedial instruction given by the trial court was a step in the right direction but was incomplete and failed to adequately address the magnitude of the error repeated over and over in the excerpt, as well as immediately following the trial court's limited admonition to the jury. We call attention to this error, trusting it will not be repeated but do not specifically hold that it would provide an independent ground for reversal of Mueller's conviction.

### CONCLUSION

[¶ 26] The judgment and sentence of the district court are reversed for the reason that the district court failed to give a lesser-included offense instruction as more fully set out above. The matter is remanded to the district court for further proceedings consistent with this opinion.

---

14. The testimony of the policemen took some pains to articulate intent only to contact Spurlin (not Mueller), and that they had no intent to arrest Spurlin (much less Mueller) but only to "contact" him.