2003 WY 19

**Wade Travis KEATS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 01–231.

Supreme Court of Wyoming.

Feb. 13, 2003.

Representing Appellant: Carol Seeger of Carter Law Office, Gillette, Wyoming.

Representing Appellee: Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Patrick J. LeBrun (Student Intern).

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶1] In July 2001, a Campbell County jury convicted appellant, Wade Travis Keats, of first-degree arson in violation of Wyo. Stat. Ann. § 6–3–101 (LexisNexis 2001). The district court sentenced him to a three- to seven-year prison term. On appeal, appellant argues that the district court failed adequately to instruct the jury on the specific intent element of first-degree arson, improperly excluded evidence that appellant was taken into custody pursuant to Wyo. Stat. Ann. §§ 25–10–101 through 25–10–127 (LexisNexis 2001), improperly precluded the jury from considering appellant's ownership of the occupied structure at issue, and failed adequately to instruct the jury regarding the definition of "maliciously," an element of first-degree arson. We affirm.

## ISSUES

[¶2] Appellant raises the following issues:

Whether the trial court erred in refusing to give a specific intent jury instruction in the trial of first degree arson which is a specific intent crime.

Whether the trial court erred in limiting evidence of the appellant's mental condition during the trial of the specific intent crime of first degree arson.

Whether the trial court erred in refusing appellant's proposed jury instruction No. G which acknowledges ownership or title to an occupied structure is not a defense to first degree arson, however, ownership or title may be considered in determining appellant's intent or state of mind.

Whether the trial court erred in refusing appellant's proposed jury instruction No. H defining the term "maliciously" to in-

clude that ill will, hatred or hostility be directed to another.

## FACTS

[¶ 3] On the evening of December 30, 2000, appellant angrily left some friends, stating to one friend "if [you don't] want to go to jail, get out of the car...." The friend complied. Appellant then returned to his mobile home in the early morning hours of December 31, 2000, and, appearing angry and intoxicated, asked his roommate to "get [her] stuff and leave, get out of his house." After gathering some of her property, and her son, in order to leave the residence, the roommate observed appellant break a window and then saw a small fire in the hallway. She extinguished the fire, and as she left, appellant "was talking about burning the house down with himself in it and he was tired of everybody using him." The roommate reported the incident to an emergency dispatcher.

[¶ 4] Campbell County sheriff's deputies responded to appellant's residence just after 1:00 a.m. on December 31, 2000. As they stood outside the mobile home, they observed appellant periodically inside the residence, but he did not initially respond to their requests to exit the residence or talk to them. Eventually, the officers entered the residence and located appellant in the bathroom. A lengthy period of interaction and attempted negotiation between appellant, the officers, and, at appellant's request, another individual ensued. During this period, appellant's unstable demeanor vacillated rapidly between suicidal, threatening, anger, laughter, and depression. For example, appellant frequently exited and retreated to the bathroom, told the officers to get out of his house, threatened to kill himself if they did not do so, displayed three different knives, at times held a knife to his abdomen and throat, stabbed knives into the bathroom wall, door, and floor while yelling at the officers to "come and get some of this," laughed at the officers, and stated that if the officers came through the bathroom door, a knife was positioned such that it would harm appellant.

[¶ 5] Appellant ultimately proceeded to light several fires at different times and at different locations within the residence. The officers, and firemen, were able to extinguish and control these fires until at least one fire began to spread, filling the mobile home with smoke. At one point, appellant broke a window, but upon seeing an officer outside the window pointing a flashlight and firearm at him, appellant took two deep breaths of fresh air and returned to the smoke-filled residence. Eventually, amidst the smoke, flames and steam, the officers subdued appellant, who was proceeding through the mobile home with a knife in his hand, and placed him into custody. The mobile home was "damaged probably beyond replacement fixing."

[¶ 6] The State charged appellant with first-degree arson and possession of a deadly weapon with unlawful intent, both felonies. A jury found appellant guilty of first-degree arson, but acquitted him of the possession of a deadly weapon charge. The district court sentenced appellant to a three- to seven-year prison term. He appeals from that judgment and sentence.

## DISCUSSION

### SPECIFIC INTENT JURY INSTRUCTIONS

[¶ 7] Appellant first argues that the district court did not adequately instruct the jury regarding the specific intent element of first-degree arson. At trial, appellant entered a timely objection, stating that "it is reversible error not to instruct the jury as to the definition of specific intent" and that "the State must prove beyond a reasonable doubt that the defendant maliciously set a fire specifically intending to destroy or damage an occupied structure." *See* W.R.Cr.P. 30(a). Appellant contends that two jury instructions he offered at trial, which instructions the district court refused, would have adequately instructed the jury on this specific intent element.

[¶ 8] We have stated that the

"trial judge is afforded latitude to tailor the instructions to the facts of the case, and reversible error will not be found as long as the instructions when viewed as a

whole and in the context of the entire trial fairly and adequately cover the issues." *Streitmatter v. State,* 981 P.2d 921, 925 (Wyo. 1999) (*quoting Scadden v. State,* 732 P.2d 1036, 1053 (Wyo.1987)). Jury instructions are "designed to inform the jury about the applicable law so that the jury may apply that law to its own findings with respect to the material facts." *Brown v. State,* 817 P.2d 429, 439 (Wyo.1991).

"Given this purpose, the test whether the jury has been instructed on the necessary elements of the crime charged is whether the instruction 'leaves no doubt as to under what circumstances the crime can be found to have been committed.' *Graham v. United States,* 187 F.2d 87, 90 (D.C.Cir.1950), *cert. denied,* 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951); *United States v. Salliey,* 360 F.2d 699, 702 (4th Cir.1966). A failure to give *any* instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, requiring reversal of the defendant's conviction[.] *Vigil [v. State],* 859 P.2d [659] at 662 [(Wyo.1993)], *quoting Cole v. Young,* 817 F.2d 412, 423 (7th Cir.1987) (emphasis added); *Phillips v. State,* 760 P.2d 388, 390 (Wyo.1988); *Redland v. State,* 766 P.2d 1173, 1174 (Wyo.1989)."

*Reilly v. State,* 2002 WY 156, ¶ 16, 55 P.3d 1259, 1265 (Wyo.2002) (*quoting Miller v. State,* 904 P.2d 344, 348 (Wyo.1995)) (emphasis in original).

[¶ 9] According to Wyo. Stat. Ann. § 6–3–101(a), a "person is guilty of first-degree arson if he maliciously starts a fire or causes an explosion with intent to destroy or damage an occupied structure." The district court instructed the jury as follows regarding the elements of first-degree arson:

#### INSTRUCTION NO. 7

The necessary elements of the offense of First Degree Arson as contained in Count I are:

1. On or about December 31, 2000;
2. In Campbell County, Wyoming;
3. The Defendant, Wade Travis Keats;
4. Maliciously started a fire(s);

5. With intent to destroy or damage an occupied structure.

[¶ 10] We recently stated:

In the past, crimes have commonly been categorized by whether they require a "specific intent" or a "general intent." For many years, Wyoming had several pattern jury instructions defining and explaining the two terms, and yet, the differences between the concepts were not always readily discernible.

"Realizing that the distinction between a specific intent crime and a general intent crime is apparently troublesome, we can perhaps clarify it by stating it in a somewhat different way. When the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, the trial judge asks the jury whether the defendant intended to do the outlawed act. Such intention is general intent. When the statutory definition of the crime refers to an intent to do some further act or attain some additional consequence, the offense is considered to be a specific intent crime and then that question must be asked of the jury."

*Reilly,* 2002 WY 156, ¶ 8, 55 P.3d at 1262 (*quoting Dorador v. State,* 573 P.2d 839, 843 (Wyo.1978)). Following that logic, first-degree arson can be categorized as a "specific intent" crime in that the statute requires that one act "with intent to destroy or damage an occupied structure." Wyo. Stat. Ann. § 6–3–101(a).

[¶ 11] Appellant offered this additional instruction on the specific intent element of first-degree arson, which instruction the district court refused:

#### DEFENDANT'S PROPOSED JURY INSTRUCTION NO. K

The crime charged in this case is a serious crime which requires proof of specific intent before the Defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific

intent the State must prove that the Defendant knowingly did an act which the law forbids, [knowingly failed to do an act which the law requires,] specifically intending a result prohibited by law. Such intent may be determined from all the facts and circumstances surrounding the case.

An act or a failure to act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

(Bracketed material in original.) The proposed jury instruction's language mirrors that contained in former W.Cr.P.J.I. 3.504 (1978). *Reilly*, 2002 WY 156, ¶ 9 n. 1, 55 P.3d at 1262 n. 1.

[¶ 12] We conclude that the district court did not err in refusing this proposed jury instruction. The district court's jury instruction on the substantive elements of first-degree arson adequately instructed the jury regarding the specific intent element of first-degree arson, leaving " 'no doubt as to under what circumstances the crime can be found to have been committed.' " *Reilly*, 2002 WY 156, ¶ 16, 55 P.3d at 1265 (*quoting Miller*, 904 P.2d at 348). "Wyoming does not require particular words be used to properly instruct on the specific intent element of the crime of [first-degree arson]." *Compton v. State*, 931 P.2d 936, 940 (Wyo.1997). On appeal, Compton argued that the district court erred by not separately (beyond the substantive elements of the crime charged) instructing "the jury on the definition of specific intent" contained in the very jury instruction appellant proposed in the instant case. *Id.* at 940–41. We held that, instead, "it is more important that the jury understand what exactly they had to determine," and the district court's "elements" instruction in that case "specifically and precisely and in an understandable manner properly" instructed the jury on the specific intent element of the crime charged. *Id.* at 941.

[¶ 13] We further note that W.Cr.P.J.I. 3.504 is no longer contained within the pattern criminal jury instructions. Indeed, we have

acknowledged a trend in the law to dispense with the pattern jury instructions defining and explaining intent due to their

"vagueness and general failure to enlighten juries." *Compton v. State*, 931 P.2d 936, 941 (Wyo.1997). Instead, juries should be instructed as to the appropriate intent that is an element of the particular crime; "it is more important that the jury understand what exactly they [are required] to determine." *Id.* This is consonant with our recent holding that "the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Mueller v. State*, 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001). The point is that attempting formally to distinguish between specific intent and general intent, beyond the substantive elements of the crime, may not be the surest way to define the nature of the intent that must be proven.

*Reilly*, 2002 WY 156, ¶ 9, 55 P.3d at 1262–63 (footnote omitted).

[¶ 14] Appellant also offered this additional instruction, which instruction the district court refused:

### DEFENDANT'S PROPOSED JURY INSTRUCTION NO. L

You are instructed that First Degree Arson is a specific intent crime. To find the Defendant guilty, the State must prove beyond a reasonable doubt that the Defendant maliciously set a fire specifically intending to destroy or damage an occupied structure. Such intent may be determined from all the facts and circumstances presented by the evidence.

[¶ 15] The district court did not err in refusing this proposed jury instruction. We are unable to discern precisely how the proposed instruction would have assisted the jury in rendering its verdict. Regarding the proposed instruction's first sentence, we find that the "facts and charges of this case did not require the court to identify [the requisite] intent as 'specific' or restate the name of the crime, but required the court to adequately instruct the jury that it should determine whether [appellant] was guilty of

..." first-degree arson. *Compton,* 931 P.2d at 940. We previously established that the district court's "elements" instruction in the instant case met this requirement. Juxtaposition of the proposed instruction's second sentence ("that the Defendant maliciously set a fire specifically intending to destroy or damage an occupied structure") with the elements instruction actually given by the district court (the "Defendant, Wade Travis Keats ... [m]aliciously started a fire(s) ... [w]ith intent to destroy or damage an occupied structure") reveals no meaningful distinction between the language contained in the proposed instruction and that contained in the elements instruction the district court actually gave the jury. *Id.* Finally, as to the proposed instruction's third sentence, the district court did instruct the jury that:

> The intent with which an act was done is [a] condition of the mind, that is seldom if ever, capable of direct or positive proof. Because we have no power to directly oversee the condition of a person's mind, the best we can do is infer it from the evidence introduced.

> The Jury may consider the circumstances surrounding the act, the doing of the act itself, the manner in which it was done, and the means used.

Jᴜʀʏ Iɴsᴛʀᴜᴄᴛɪᴏɴ Dᴇғɪɴɪɴɢ "Mᴀʟɪᴄɪᴏᴜs-ʟʏ"

[¶ 16] As was mentioned above, one of the elements of first-degree arson that must be proved by the State is that the defendant "maliciously started a fire." One of the trial battles in the instant case was over the correct definition of the word "maliciously." The district court gave the following instruction to the jury:

### INSTRUCTION NO. 15

"Maliciously" means acting in the state of mind in which an intentional act is done without legal justification or excuse. The term "maliciously" conveys the meaning of

hatred, ill will, or hostility and implies a wicked state of mind.

[¶ 17] The appellant objected to Instruction No. 15 and offered the following instruction in its place:

### DEFENDANT'S PROPOSED JURY INSTRUCTION NO. H

"Maliciously" means acting in the state of mind in which an intentional act is done without legal justification or excuse. The term "maliciously" conveys the meaning of hatred, ill will, or hostility *toward another.*

(Emphasis added.) The wording of this proposed jury instruction is identical to the wording of a suggested definition contained in the Use Note to W.Cr.P.J.I. 31.01A (1996), which is the elements instruction for first-degree arson. That suggested definition borrowed and modified the definition of malice found in W.Cr.P.J.I. 21.01D (1996), which is one of the homicide instructions.

[¶ 18] There are two interrelated issues raised by these conflicting definitions. First, does the malice or the malicious act have to be directed toward another? And second, does the State have to prove *either* (1) that the act was done with no legal justification or excuse, or (2) that it was done with hatred, ill will or hostility, or does it have to prove *both* (1) and (2)? [1]

[¶ 19] The words "malice," "malicious," and "maliciously" have appeared as elements in several crimes and causes of action, including murder, arson, malicious mischief, and malicious prosecution. Because the terms are not statutorily defined, this Court has at times been called upon to determine their meanings in their different contexts. A review of some of that case law may help to put our issues into perspective. For instance, in malicious prosecution, the term means that the prosecution was instituted from an "improper motive," which is " 'any motive other than one to further the ends of justice or to punish an offender against the criminal law.' " *Huber v. Thomas,* 45 Wyo. 440, 19

---

1. During deliberations, the jury in the instant case sent a note to the judge asking, "Does maliciously when it says hatred, ill will, or hostility have to be towards someone else or can it be towards yourself or an object?" The district court judge did not answer that question, other than to tell the jury that the law was contained in the instructions they had been given.

P.2d 1042, 1045 (1933) (*quoting Henning v. Miller*, 44 Wyo. 114, 8 P.2d 825, 831 (1932)).

[¶ 20] In *Wiggin v. State*, 28 Wyo. 480, 206 P. 373, 374 (1922), the defendant was convicted of violating a statute against "willfully and maliciously kill[ing] any ... neat cattle ... the same being the property of another...." In reversing the conviction, Justice Blume delivered the following analysis of the word "maliciously" as used in that statute:

> The defendant asked an instruction to the effect that the jury must find that the killing of the animal was done through malice, hatred, or ill will toward George and Henry Frederick, or that the killing was so cruel that malice could be inferred therefrom.... The court gave, on this subject, over the objection of the defendant, the following instruction:
>
> > "You are instructed that malice includes not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive. Malice is not confined to ill will toward an individual, but is intended to denote an action flowing from any wicked and corrupt motive, a thing done with a wicked mind, where the fact has been attended with such circumstances as evince plain indications of a heart regardless of social duty, and fatally bent on mischief; hence malice may be implied or inferred from any deliberate and cruel act against another, or his property, which shows an abandoned and malignant heart."
>
> The case of *State v. Johnson*, 7 Wyo. 512, 54 Pac. 502 [1898], is a case involving malicious mischief, and the court, in speaking of the malice essential to be shown in such cases, although the act there involved was only a misdemeanor, said in part:
>
> > "The authorities are nevertheless substantially agreed that the malice necessary to constitute the offense is something more than the malice which is ordinarily inferred from the willful doing of an unlawful act without excuse. The statutes were not intended to make every willful and wrongful act punishable as a crime, but they are devised to reach

> that class of cases where the act is done with a deliberate intention to injure. * * * And it seems to be generally held that in order to bring an offense under the head of malicious mischief it must appear that the mischief was itself the object of the act, and not that it was incidental to some other act lawful or unlawful."
>
> The principle laid down in that case that the malice in such cases is something more than what is ordinarily understood as legal malice, but is that malice as it is more ordinarily understood in common speech, has been the settled rule of law in this state since 1898, and we see no reason for departing therefrom....
>
> > "... Maliciously, in this sentence, is still more significant and controlling. It means, with ill will, malevolence, grudge, spite, wicked intention, enmity. And this ill will cannot exist without an object. It must be aimed at some one; and assimilating this offense to malicious mischief, which it very much resembles, we hold the malice the culprit entertains must be directed to the owner of the premises."

*Wiggin*, 206 P. at 374 (*quoting Johnson v. State*, 61 Ala. 9 (Ala.1878)).

[¶ 21] Clearly, at least in 1922, and at least as applied to malicious mischief, the concept of malice included not only an element of ill will, but it required that such ill will be directed toward a particular person. Less than two years later, however, in penning the opinion that became the source for the pattern jury instruction definition of malice in murder cases, and indirectly, in arson cases, Justice Blume reached a noticeably different conclusion:

> As to what constitutes malice is not easily defined.... In its popular sense, the term malice conveys the meaning of hatred, ill will, or hostility toward another.... That is not its legal meaning, but the term nevertheless implies a wicked condition of mind while the homicide is committed; a mind, we may say, committing the very act willfully.... In *Bennett v. State*, 15 Ariz. 58, 136 Pac. 276 [1913], it was said:

"The legal import of the term 'malice' extends beyond and is more comprehensive than ill will, hatred, or revenge. It includes all states of the mind under which the killing of a human being by another takes place without any cause which will, in law, justify or excuse it or mitigate the homicide to manslaughter."

... [I]t is said that the term includes all those states and conditions of mind which accompany a homicide that is committed without legal excuse or extenuation.

*State v. Sorrentino*, 31 Wyo. 129, 224 P. 420, 423 (1924).

[¶ 22]  In the definition of malice in *Wiggin*, emphasis was placed upon the concept of ill will toward another person. In the definition of malice in *Sorrentino*, emphasis was placed upon the concept of an act committed without legal justification or excuse. The "old" pattern jury instruction, W.Cr.P.J.I. 7.106 (1978), and the new pattern jury instruction, W.Cr.P.J.I. 21.01D (1996), contain both concepts.[2] The problem is that the concepts are not identical, leaving considerable doubt as to exactly what it is the State has to prove in a given case.[3] Perhaps recognizing this difficulty, the source note to the new pattern instruction directs attention to *Braley v. State*, 741 P.2d 1061, 1069 (Wyo. 1987), where this Court, in a homicide case, said simply that "[m]alice has been defined as intentional killing without legal justification or excuse and under circumstances which are insufficient to reduce the crime to manslaughter." *See also Nunez v. State*, 383 P.2d 726, 729 (Wyo.1963). In *Armstrong v. State*, 826 P.2d 1106, 1113–14 (Wyo.1992), we noted the confusion that can arise because of differing legal and common definitions of malice, yet we also cited *Sorrentino* with approval and noted that the passage of six decades had "failed to endow our language with suitable synonyms."

2.  W.Cr.P.J.I. 7.106 (1978) states:
    "With malice" means the commission of a wrongful act done intentionally without legal justification or excuse. The term "malice" conveys the meaning of hatred, ill will, or hostility toward another and implies a wicked condition of mind.
    W.Cr.P.J.I. 21.01D (1996) states:
    "Malice" means the state of mind in which an intentional act is done without legal justifi-

[¶ 23]  In *Dean v. State*, 668 P.2d 639, 642–43 (Wyo.1983), we considered the meaning of the word "maliciously" specifically within the context of the first-degree arson statute. The value of *Dean* as precedent, however, is diminished by the fact that the crime in that case was charged under a statute, now repealed, that did not much resemble the present statute. For ease of comparison, we will set out both statutes in full. Wyo. Stat. Ann. § 6–121 (1957) states:

Any person who willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto or any standing timber on public or privately owned land, whether the property of himself or of another, shall be guilty of arson in the first degree....

Wyo. Stat. Ann. § 6–3–101(a) states:

A person is guilty of first-degree arson if he maliciously starts a fire or causes an explosion with intent to destroy or damage an occupied structure.

[¶ 24]  In *Dean*, in a discussion focused mainly on the fact that the old statute defined a general intent crime, while the new statute defined a specific intent crime, we quoted with approval the following definition of the word "maliciously" as used in the old statute:

" '... "[M]alicious" when used in defining the crime of arson is quite different from its literal meaning.   * * *  "The malice  * * *  need not be express, but may be implied; it need not take the form of malevolence or ill will, but it is sufficient if one deliberately and without justification or excuse sets out to burn the dwelling house of another." '  ...

cation or excuse. The term "malice" conveys the meaning of hatred, ill will, or hostility toward another.

3.  In the case of a contract killing, for instance, should the State have to prove that the hired killer had actual, personal ill will or hatred for the victim? That does not seem likely.

... To be a willful and malicious burning in the law of arson, the burning must simply be done voluntarily and without excuse or justification and without any bona fide claim of right.... '[M]aliciously' means that state of mind which actuates conduct injurious to others without lawful reason, cause or excuse."

*Dean,* 668 P.2d at 642–43 (*quoting State v. Scott,* 118 Ariz. 383, 576 P.2d 1383, 1385 (1978)). *See also* 5 Am.Jur.2d *Arson and Related Offenses* § 7 (1995).

[¶ 25] The Wyoming Criminal Code of 1982, of which the new arson statute is a part, abolished common law crimes. Wyo. Stat. Ann. § 6-1-102 (LexisNexis 2001). Consequently, the important question is not what "maliciously" may have meant as part of common law arson, or even as part of the earlier statute, but what it means in the current statute. *See* 5 Am.Jur.2d, *supra,* at §§ 1, 2. In making that determination, however, we may resort to prior case law as an interpretive aid. *Id.* The ordinary rules of statutory construction, however, are our primary guide.

[¶ 26] We have often stated our principles of statutory construction, and we will not repeat them here at length. Suffice it to say that, if the language of a statute is clear and unambiguous, we simply abide by its plain meaning. If the statute is ambiguous, which means that its meaning is uncertain and it is susceptible to more than one interpretation, we may construe it. Our primary goal is to determine legislative intent. Statutes are to be given a reasonable interpretation with reference to their purpose. Ambiguities in criminal statutes should be resolved in favor of lenity. *Union Pacific R.R. v. Trona Valley Federal Credit Union,* 2002 WY 165, ¶ 7, 57 P.3d 1203, 1205–06 (Wyo.2002); *DeLoge v. State,* 2002 WY 155, ¶ 8, 55 P.3d 1233, 1237 (Wyo.2002); *State v. Nelson,* 2002 WY 99, ¶ 6, 49 P.3d 185, 188 (Wyo.2002); *Jones v. State,* 2002 WY 35, ¶ 10, 41 P.3d 1247, 1252 (Wyo.2002).

[¶ 27] In applying the *Sorrentino* definition of malice, it becomes obvious that differ-

ent evidence is required to prove the hatred or ill will that characterizes malice in its common meaning than the evidence that is required to prove the absence of a legal justification or excuse. In applying its murder statutes, the Supreme Court of North Carolina declared that

the element of malice may be established by at least three different types of proof: (1) "express hatred, ill-will or spite"; (2) commission of inherently dangerous acts in such a reckless and wanton manner as to "manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief"; or (3) a "condition of mind which prompts a person to [act] intentionally without just cause, excuse or justification." *[State v.] Reynolds,* 307 N.C. at 191, 297 S.E.2d [532], 536 [ (1982) ].

*State v. Coble,* 351 N.C. 448, 527 S.E.2d 45, 47 (2000). This approach relieves the dichotomy between the concept of "ill will" and the concept of "no legal excuse or justification" left by *Sorrentino,* in that it suggests that the varying definitions are alternatives. We must then ask whether the legislature intended for either or both of those alternatives to apply under the first-degree arson statute.[4]

[¶ 28] In his analysis of the revised criminal code that included the new arson statute, Professor Theodore E. Lauer concluded that the word "maliciously" may well be surplusage in the statute:

The word "maliciously" in first-degree arson is probably unnecessary. While traditionally arson has required that a fire be "willfully and maliciously" started, the term "maliciously" has meant something less than intentionally. *See* R. Perkins & R. Boyce, Criminal Law 856–61 (3d ed.1982), where a malicious state of mind is said to be one wherein there is an absence of justification, excuse or mitigation, and either an intent to cause a particular harm or the "wanton and wilful doing of an act with awareness of a plain and strong likelihood that such harm may result." *Id.* at

---

4. Because first-degree arson is now a specific intent crime, the third alternative identified in *Coble*—the commission of inherently dangerous

acts in a reckless and wanton manner—would not suffice to prove the crime.

860. But where, as in first degree arson, the act of starting the fire must be done "with intent to destroy or damage an occupied structure," it is clear that only an intent to cause the harm will suffice, and a knowing or reckless state of mind is not enough.

Theodore E. Lauer, *Goodbye 3-Card Monte: The Wyoming Criminal Code of 1982*, XIX Land & Water L.Rev. 509, 511 n. 12 (1984). We are not, however, free to ignore any word that the legislature has chosen to place in a statute, and every word is presumed to have a meaning. *Basin Elec. Power Co-op. v. Bowen*, 979 P.2d 503, 509 (Wyo.1999). Furthermore, "maliciously" is a word that gives the statute a *mens rea* element, without which it would reach innocent conduct.[5] *State v. Stern*, 526 P.2d 344, 347 (Wyo.1974); Charles E. Torcia, Wharton's Criminal Law § 27 at 164–65 (15th ed.1993). *See also Dean*, 668 P.2d at 642 and *State v. Laude*, 654 P.2d 1223, 1229 (Wyo.1982).

[¶ 29] Wyoming is far from alone in having attempted to modernize its arson laws. The commentaries to the Model Penal Code describe a "vast legislative development of the offense" of arson in the United States. Model Penal Code, § 220.1 at 4 (1980). Three patterns existed in this legislation: (1) offenses classified in relation to the types of property involved, but with criteria discriminating according to the likelihood of endangering life; (2) offenses classified specifically with reference to danger to persons; and (3) offenses classified solely on the basis of the type of property burned. *Id.* at 5–9. In most legislation, the concept of danger to others was incorporated through use of the term "maliciously" or by denoting that the property burned had to be the property "of another." *Id.* at 18–25.

[¶ 30] Arizona's experience with the *mens rea* element of its first-degree arson statute is enlightening as we study our own statute.[6] Prior to 1978, first-degree arson in Arizona required that a person "willfully and maliciously" set fire to a structure. That phrase was judicially construed to mean "voluntarily and without excuse or justification and without any bona fide claim of right." *Matter of Appeal in Pima County Juvenile Action No. J-37390-1*, 116 Ariz. 519, 570 P.2d 206, 209 (1977). After a full revision of Arizona's criminal code, and a couple of subsequent amendments, the *mens rea* element of the first-degree arson statute now is "knowingly and unlawfully damaging an occupied structure . . . ." Ariz.Rev.Stat. Ann. § 13–1704 (West 2001). In construing the word "unlawfully" and its statutory definition—"contrary to law or, where the context so requires, not permitted by law"—the Arizona Court of Appeals emphasized the dangers of fire:

> "A fire poses unique hazards. As a means of destruction, it is difficult to control and may quickly spread to nearby buildings or fields. Firemen and policemen are endangered. Neighbors and passers-by, fearing that a structure is occupied, may attempt hazardous rescue efforts."

*State v. Newfield*, 161 Ariz. 470, 778 P.2d 1366, 1369 (1989) (*quoting State v. Durant*, 674 P.2d 638, 641 (Utah 1983)).

[¶ 31] The point of this detour into Arizona law has been to show that there is little difference between the concept of "unlawfully" (contrary to law or not permitted by law) and "maliciously" (without legal justification or excuse). Beyond that, the use of these terms in conjunction with the burning of an occupied structure, rather than the burning of the property of another, suggests that the goal of the first-degree arson statutes in both cases is to protect all members

---

5. The intentional burning of an "occupied structure" could certainly be done without any criminal intent, especially since "occupied structure" is defined by statute to include situations where no one is actually present in the structure. *See* Wyo. Stat. Ann. § 6–1–104(a)(v) (LexisNexis 2001). For instance, fire departments often perform training exercises by burning old structures with the owner's permission. The fire is set with the specific intent to destroy or damage the structure, but there is no unlawful intent.

6. In addition to the cases cited herein, *see State v. Vickers*, 138 Ariz. 450, 675 P.2d 710, 711 (1983), *cert. denied*, 497 U.S. 1033, 110 S.Ct. 3298, 111 L.Ed.2d 806 (1990); Rudolph J. Gerber, *Arizona Criminal Code Revision: Twenty Years Later*, 40 Ariz. L.Rev. 143, 145 (1998); and Rudy J. Gerber and John F. Foreman, Commentary, *Arizona's Criminal Law: The Critical Need for Comprehensive Revision*, 18 Ariz. L.Rev. 63, 65, 95 (1976).

of the public who might be harmed, not just the owner of the property or some other identified individual. In turn, this suggests that in a prosecution for first-degree arson, the State does not have to prove that the malice or the malicious act was directed toward another.[7]

**[¶ 32]** Earlier in this opinion, we noted that we do not construe statutes that we have not first found to be ambiguous. If a statute is not ambiguous, we simply "abide by its plain meaning." *Union Pacific R.R.,* 2002 WY 165, ¶ 7, 57 P.3d at 1205–06; *DeLoge,* 2002 WY 155, ¶ 8, 55 P.3d at 1237; *Nelson,* 2002 WY 99, ¶ 6, 49 P.3d at 188; *Jones,* 2002 WY 35, ¶ 10, 41 P.3d at 1252. In that regard, we must ask whether the word "maliciously" is ambiguous as it appears in Wyo. Stat. Ann. § 6–3–101(a). Despite the lengthy analysis through which we have just gone, we conclude that the answer is "no." In enacting statutes, the legislature is presumed to have acted with full knowledge of the existing law. *In re Estate of Fosler,* 13 P.3d 686, 688 (Wyo.2000); *Almada v. State,* 994 P.2d 299, 306 (Wyo.1999). In the present context, that means that in 1982 when the legislature adopted Wyo. Stat. Ann. § 6–3–101(a) as part of the new criminal code, it was aware of the definition of malice that this Court has been applying since at least 1924. That definition has always contained the alternative theories of actual hostility or ill will and the doing of an act without legal justification or excuse, the latter alternative not requiring the direction of ill will toward any particular person. The legislature's use of the word "maliciously" in a statute designed to protect any person who may be endangered as a result of an arson comports with that definition. The fact that the pattern jury instructions, in not distinguishing between the alternate theories, may have created questions for juries, does not make the statute ambiguous.

**[¶ 33]** We conclude that the district court did not err in refusing the appellant's proposed jury instruction defining the term "maliciously." In fact, the jury instruction as given may have been prejudicial to the State

in that it appears to require the State to prove both that the appellant acted with ill will and hostility and that he acted without legal justification or excuse. The jury instruction does not distinguish between actual malice and implied malice. The facts of the instant case bear out the need for such distinction. The appellant may not have felt actual hostility or ill will toward his roommate or toward the police officers who responded to the 911 call. His actions, nevertheless, placed them all in great danger. That is exactly the type of conduct that can be characterized as being "without legal justification or excuse."

**OTHER ISSUES**

**[¶ 34]** Appellant asserts that because first-degree arson contains an element of specific intent and appellant argued at trial that he ultimately intended to commit suicide, the district court improperly excluded evidence that law enforcement took appellant into custody pursuant to Wyo. Stat. Ann. §§ 25–10–101 through 25–10–127, the statutory procedures utilized to place a mentally ill person in emergency detention. Appellant's contention is that his specific intent being the intent to kill himself, he did not have the specific intent to commit first-degree arson. Aside from citing summarily to the referenced statutes, appellant does not otherwise cite to any legal authority in advancing this argument. Appellant further contends that the district court's jury instruction that "ownership or title to an occupied structure is not a defense to First Degree Arson" improperly precluded the jury from considering appellant's ownership of the occupied structure for other proper purposes. This argument consists of two paragraphs, neither of which cite to any supporting legal authority.

**[¶ 35]** "We have repeatedly stated that arguments that are not ... supported by pertinent citations to authority will not be considered." *Eustice v. State,* 11 P.3d 897, 904 (Wyo.2000).

---

7. Of course, that does not foreclose the State, in an appropriate case, from pursuing and proving the alternate definition of malice based on actual hostility or ill will toward someone.

## CONCLUSION

[¶ 36]  The district court did not err in refusing to give the appellant's proposed jury instructions regarding specific intent and malice.  The appellant's other arguments have not been supported by cogent reasoning or pertinent authority.  The judgment and sentence of the district court is affirmed.