Conrad DURAN, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 96–168.

Supreme Court of Wyoming.

Dec. 22, 1997.

Conrad Duran, Pro Se.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General and Mark T. Moran, Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN, and LEHMAN, JJ.

TAYLOR, Chief Justice.

Having signed a plea agreement without reading the document, appellant feels he should be excused from the penitentiary term therein agreed to. That term was the most prominent feature of two judgments and sentences which were not appealed. We affirm the district court's denial of appellant's efforts to avoid his plea agreement

through the filing of a motion purportedly seeking correction of an illegal sentence.

## I. ISSUES

Appellant, Conrad Duran (Duran), failed to articulate his issue(s). We summarize the thrust of his argument:

1. Due to his inattention to the plea agreement he signed, should appellant be entitled to post-conviction relief, sentence reduction, or permission to withdraw his guilty plea?

Appellee, State of Wyoming, states one issue:

Whether the district court correctly denied appellant's "Motion for Correction of Sentence (Rule 35 W.R.Cr.P.)" and whether appellant's motion or petition are properly before the court.

## II. FACTS

On June 7, 1995, Duran was convicted of two counts of delivery of marijuana and sentenced to a term of not less than thirty months nor more than forty months in the Wyoming State Penitentiary. Duran does not contest that conviction and it is not the subject of this appeal, although the length of the sentence has relevance here.

Following the events which gave rise to the foregoing conviction, a named informant made a purchase of marijuana from Duran, and the resultant search of Duran's residence yielded a quantity of marijuana (which Duran admitted was his) as well as the scales and packaging materials which are common accoutrements of the "hemp" trade. Based upon those events, Duran was charged with two new counts of delivery of marijuana or possession thereof with intent to deliver.

When the privately retained attorney who had represented Duran in his earlier trial withdrew from the instant case, Duran requested the services of a public defender because he wanted "to plea-bargain and move on with [his] life." Following submission of an affidavit of indigence, a public defender was assigned.

Notwithstanding the desire of his client to reach a plea agreement, Duran's counsel filed a battery of pretrial motions tailored to the unique circumstances of the latest charges, and the district court responded favorably to those motions while the prosecuting attorney afforded Duran's counsel full discovery. Notwithstanding his counsel's preparedness for trial, Duran chose to enter into a plea agreement offered by the district attorney which would result in a guilty plea to one charge in return for dismissal of the second and a sentence which would run concurrently with his earlier thirty to forty month sentence, requiring only that Duran serve an additional six months pursuant to his guilty plea. Another advantage of this plea agreement, as perceived by Duran, was the permission he received to plead pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), thus receiving the benefits of the plea bargain while being relieved of having to provide a factual basis for his plea.

In response to questions from the district court, Duran repeatedly insisted that he was "just taking the plea agreement." He described one clear advantage of the plea agreement, asserting his understanding that proceeding to trial would mean: "I'd be on two charges instead of one." Pressed by the district court as to why he would take the plea agreement, Duran twice acknowledged the benefit of receiving only six months of additional penitentiary time for his latest conviction:

THE COURT: Meaning that you then fear that there's a risk that you might have to serve more time than the six months?

THE DEFENDANT: Yes, sir.

THE COURT: Is that what you're saying?

THE DEFENDANT: Yes.

* * *

THE COURT: Well, what is so good about the plea agreement that you want to take it? You've got to tell me in your own words. Is that basically it?

THE DEFENDANT: Plead guilty, admit it to the court, not get as much time as if found guilty.

THE COURT: So you don't want to run that risk of having more than six months for this charge?

THE DEFENDANT: Yes, sir.

On August 22, 1995, the district court accepted Duran's guilty plea and handed down the agreed-upon sentence to the penitentiary "for a period of not less than thirty-six (36) months nor more than forty-six (46) months," with credit for 222 days served at the Laramie County Detention Facility. No appeal followed. However, two months later, Duran notified the district court and the district court clerk, via handwritten notes, that "when the Judgment and Sentence of the court was written it did not say if the 2 sentence[s] [were] to run concurrent or consecutive. * * * Please send the paper work showing that they are to run concurrent." The district court responded with an amended judgment and sentence reiterating the thirty-six to forty-six month sentence, but making it clear that the sentence would run concurrently with Duran's earlier thirty to forty month sentence. Again, no appeal followed.

Five months later, Duran filed a motion for sentence reduction, acknowledging the district court's "sentence of 36–46 months in the Wyoming State Penitentiary," but asking for a reduction because he had been a "model prisoner" who "consistently and successfully attended psychoactive substance education, Narcotics Anonymous and Alcoholics Anonymous (certificates attached)." That motion for sentence reduction was denied.

Duran then filed a self-titled "Motion for Correction of Sentence (Rule 35, W.R.Cr. P.)," the body of which prayed the district court "to vacate his judgment and sentence, pursuant to 7–14–101 et. seq., Wyoming Statutes 1977 as amended," and also suggested that his guilty plea had been the product of a misunderstanding with his own attorney. From the denial of that pleading, Duran timely filed this appeal.

### III. STANDARDS OF REVIEW

■ The apparent tension between the title and prayers of the pleading, the denial of which has occasioned this appeal, requires our review of pertinent standards applicable to petitions for post-conviction relief, motions for correction of an illegal sentence, and post-sentencing requests for permission to withdraw a guilty plea.

·It is universally recognized that post-conviction relief is not a substitute for an appeal and the petition will not lie where the matters alleged as error could or should have been raised in an appeal or in some other alternative manner. *Munoz v. Maschner,* Wyo., 590 P.2d 1352 (1979).

*Pote v.·State,* 733 P.2d 1018, 1022 (Wyo.1987). Issues amenable to redress through direct appeal are foreclosed from consideration in the context of a petition for post-conviction relief by the doctrine of *res judicata. Cutbirth v. State,* 751 P.2d 1257, 1262 (Wyo.1988) (*citing, inter alia, Wright v. State,* 718 P.2d 35, 37 (Wyo.1986)).

■ A motion to correct an illegal sentence is necessarily predicated upon the validity of the underlying conviction and may not be used to examine alleged errors taking place prior to the imposition of sentence. *Evans v. State,* 892 P.2d 796, 797 (Wyo.1995). District courts are vested with broad discretion in dealing with motions brought pursuant to W.R.Cr.P. 35, and appellate review will not yield a reversal absent demonstration of a clear abuse of that discretion. *Asch v. State,* 784 P.2d 235, 237 (Wyo.1989). An illegal sentence is one which exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates constitutions or the law. ·*Ellett v. State,* 883 P.2d 940, 942 (Wyo.1994) (*citing Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962)).

■ Finally, a motion for withdrawal of a guilty plea made after imposition of sentence may be set aside "only to correct manifest injustice." W.R.Cr.P. 32(d). We have no license to reverse a district court's denial of a motion to withdraw a guilty plea unless the appellant can establish that the district court could not reasonably have concluded as it did and, as a result, clearly abused its discretion. *Bird v. State,* 901 P.2d 1123, 1131 (Wyo.1995) (*quoting Martin v. State,* 720 P.2d 894, 896 (Wyo.1986)); *Rude v. State,* 851 P.2d 20, 22–

23 (Wyo.1993) (*quoting Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980)).

## IV. DISCUSSION

The core "fact" of this appeal is Duran's insistence that his understanding of the plea agreement was that he would be required to serve *no* additional penitentiary time for this, his third conviction for delivery of a controlled substance within a three month period. Given his colloquy with the district court at the time he entered his plea and was sentenced, the only possible way for him to expect no additional penitentiary time would be if the district attorney's office had offered him a sentence of six months, to run concurrently with a previous sentence of thirty to forty months, for Duran's third conviction in three months for delivery of marijuana.

Duran admits that he signed the plea agreement without reading it, but proceeds to ask that he be relieved of that plea agreement because he claims to have misunderstood it. Acknowledging that written agreements are, without doubt, far from the norm in the illicit drug trade, we must determine whether Duran's failure to read his plea agreement or the two judgments and sentences which followed should entitle him to post-conviction relief, sentence reduction, or permission to withdraw his guilty plea.

Were we to consider this appeal as being from the district court's denial of a petition for post-conviction relief, we would be obliged to dismiss it because Duran failed to file a petition for review within eleven days of the district court's denial of the petition, as required by W.R.A.P. 13.03(a) and Wyo. Stat. § 7–14–107 (1997). Even more fundamental to our decision on the post-conviction relief issue is Duran's failure to mount an appeal, either from the judgment and sentence originally imposed or the amended judgment and sentence. Both sentencing documents expressly and explicitly informed Duran that he faced a term of not less than thirty-six months nor more than forty-six months for his guilty plea. He offers no explanation of why, if such a sentence was contrary to his understanding, an appeal was not immediately commissioned. Without such an appeal, or credible evidence of facts supportive of an appeal which became available to Duran only after the time for appeal had passed, Wyo. Stat. § 7–14–103(a)(i) (1997) precludes post-conviction relief, foreclosing appellate review thereof.

■ Taking the title of Duran's brief at face value, we must consider whether the district court properly denied his pleading as a motion for sentence reduction pursuant to W.R.Cr.P. 35. Fatal to this claim is the imposition of a sentence which was neither in excess of the statutory maximum, duplicative of another sentence for the same offense, nor violative of constitution or law. Of course, Duran does not claim the sentence was illegal, only that his understanding of that sentence was imperfect; otherwise, he would not have entered his guilty plea. Therefore, his true issue is not with the sentence but with proceedings prior to the imposition of that sentence. Proceedings prior to the imposition of sentence are beyond the scope of W.R.Cr.P. 35, and will not be addressed in the context of a motion made pursuant to W.R.Cr.P. 35.

■ At last, we must determine whether Duran should be permitted to withdraw his guilty plea. To succeed in such a quest at this juncture would require Duran to demonstrate a manifest injustice which the district court abused its discretion in failing to recognize. In service of such a determination, we reiterate the essential position of Duran at the time he entered into the plea agreement he would now disclaim: (1) he was already laboring under a sentence of thirty to forty months for two earlier convictions on two counts of delivery of marijuana; (2) he was facing trial on two new counts of delivery of, or possession with intent to deliver, marijuana; and (3) the State had a firm case against him. From such dire straits, Duran would have us believe that he salvaged a plea agreement whereby the State would dismiss one of the two counts against him and recommend a sentence of only six months on the

other count, to run concurrently with his prior sentence, in return for which his sole "sacrifice" was an *Alford* plea. It is clear that there was no abuse of discretion in the district court's implicit finding that Duran failed to show any error in the acceptance of his *Alford* plea, let alone manifest injustice.

## V.  CONCLUSION

Duran's conviction and sentencing were virtually flawless exercises. Affirmed.