2002 WY 99

### The STATE of Wyoming, Petitioner,

v.

### Andrew I. NELSON, Respondent.

### No. 01–86.

Supreme Court of Wyoming.

July 1, 2002.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Devon Coleman, Prosecution Assistance Program; and Ryan Schwartz, Student Intern, Representing Petitioner. Argument by Mr. Schwartz.

Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel, Representing Respondent. Argument by Mr. Roden.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1]   Andrew I. Nelson (Nelson) was convicted of one count of failure to maintain vehicle liability insurance coverage or a bond in violation of Wyo. Stat. Ann. § 31–4–103 in the justice court of Crook County, Wyoming. Nelson appealed to the district court, which reversed the judgment and vacated the sentence and probation on the grounds that the statute requires owners of motor vehicles to maintain liability insurance or a bond but does not require the same of those who only operate a motor vehicle.  The State of Wyoming filed a Petition for Writ of Review with this Court, which was granted.  We reverse the district court and reinstate the judgment and sentence of the justice court.

## ISSUE

[¶ 2]   The Petition for Writ of Review framed the question posed to this Court as:

Can a non-owner driver operate a motor vehicle without having a liability insurance policy or bond in specified amounts be convicted of a crime pursuant to Wyoming Statute 31–4–103 when they do so?

## FACTS

[¶ 3]   Nelson was driving an uninsured motor vehicle when he was involved in an accident with a pedestrian.  Nelson was charged with one count of reckless driving in violation of Wyo. Stat. Ann. § 31–5–229 and one count of failure to maintain liability coverage in violation of Wyo. Stat. Ann. § 31–4–103.  A two-day jury trial was held in the justice court of Crook County.  Nelson was acquitted on the reckless driving charge but

* Chief Justice at time of oral argument.

found guilty of failing to maintain liability coverage. Nelson was sentenced to 180 days in jail, a fine of $370.00, $30.00 in costs, and restitution of $30,476.69. The justice court suspended 150 days of the jail sentence and placed Nelson on five months probation.

[¶ 4] Nelson appealed his conviction to the district court. Nelson argued that a person who operates, but does not own, the motor vehicle could not be convicted of a failure to maintain liability coverage under Wyo. Stat. Ann. § 31-4-103. The district court agreed with Nelson's interpretation of the statute, reversed the judgment, and vacated the sentence imposed by the justice court. The State filed a Petition for Writ of Review, which was granted.

## DISCUSSION

[¶ 5] The sole issue on appeal concerns the interpretation of the language in Wyo. Stat. Ann. § 31-4-103 (LexisNexis 2001) (emphasis added), which provides in its entirety:

(a) **No owner of a motor vehicle required to be registered shall operate or permit the operation of his motor vehicle without having in full force and effect a motor vehicle liability policy in amounts provided by W.S. 31-9-405(b) or a bond in amounts provided by W.S. 31-9-102(a)(xi).** Violation of this subsection is a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not less than two hundred fifty dollars ($250.00) nor more than seven hundred fifty dollars ($750.00), or both. On a second or subsequent violation of this subsection, the person may be fined not less than five hundred dollars ($500.00) nor more than one thousand five hundred dollars ($1,500.00), imprisoned for not more than six (6) months, or both. In addition to the fine or imprisonment imposed for a second or subsequent violation of this subsection, the judge shall require the defendant to deliver the registration and license plates of the vehicle involved to the county treasurer for the county where the citation was issued, and the registration and license plates shall be held by the county treasurer until such time as the judge determines that the defendant has met all obligations imposed by law. Excusable neglect or mistake by another is a defense for any violation of this subsection. If evidence of excusable neglect or mistake by another is presented and the defendant is convicted, the court may consider this evidence in imposing a penalty under this subsection. The judge may suspend part or all of the sentence under this subsection and place the defendant on probation subject to conditions imposed by the judge which shall include a condition that the defendant shall deliver the registration and license plates of the vehicle involved to the county treasurer for the county where the citation was issued. This subsection does not apply to a vehicle owned by a nonresident and registered in a state requiring insurance if a vehicle insurance policy meeting requirements of the laws and regulations of that state is in effect or unless it otherwise complies with the laws of that state concerning compulsory financial responsibility. The department shall report any violation of this subsection to the motor vehicle administrator in the state wherein the vehicle is registered. A vehicle owned by a nonresident and registered in a state not requiring insurance is exempt from this subsection.

(b) Any police officer as defined by W.S. 31-5-102(a)(xxxii), issuing a citation for any moving violation under W.S. 31-5-101 through 31-5-1402 or inspecting any vehicle, shall require the operator of any motor vehicle required to be registered to produce evidence of whether the operator or owner of the motor vehicle has in full force and effect a motor vehicle liability policy in amounts provided by W.S. 31-9-405(b) or a bond in amounts provided by W.S. 31-9-102(a)(xi). If the operator cannot show written proof of financial responsibility, the driver shall have seven (7) days to produce such proof. **Any operator or owner of a motor vehicle**

**required to be registered who is not able to demonstrate evidence of compliance with subsection (a) of this section may be charged with violating that subsection.** Additionally, the judge may order any driver failing to produce written proof of financial responsibility to pay restitution in accordance with W.S. 7–9–101 through 7–9–115. Effective January 1, 1993, the displaying or exhibiting .of a validly issued insurance identification card as provided by W.S. 31–8–201 by an operator or owner of the motor vehicle constitutes compliance with . this section. No operator or owner of a motor vehicle charged with violating this section shall be convicted if he produces in court one (1) of the following which was valid at the time of arrest or at the time the citation was issued:

(i) A liability insurance policy previously issued to him;

(ii) Evidence of a bond on file with the department in amounts provided by W.S. 31–9–102(a)(xi).

(c) Upon receipt of a notice of a conviction under subsection (a) of this section, the department shall require the person convicted to file and maintain. for a three (3) year period, proof of financial responsibility as required by W.S. 31–9–401 through 31–9–414. Failure to provide proof of financial responsibility within thirty (30) days after notification shall result in the suspension of the person's driver's license and nonresident operating privileges. The suspension shall remain in effect until the required proof of financial responsibility is received by the department.

(d) This section does not apply to:

(i) Self-insurers pursuant to W.S. 31–9–414;

(ii) A vehicle owned by the United States government, any state or political subdivision thereof which is self-insured;

(iii) A vehicle meeting the requirements of W.S. 31–9–408 and 31–9–409;

(iv) A commercial vehicle registered or proportionally registered in this and any other jurisdiction provided the vehicle is covered by a vehicle insurance policy complying with the laws of any other jurisdiction in which it is registered.

(Emphasis added.)

▮▮▮ [¶ 6] In construing statutory language, we apply certain general principles:

Applicable general principles of statutory construction include: if the language is clear and unambiguous, we must abide by the plain meaning of the statute; if a statute is ambiguous, we may resort to general principles of construction; an ambiguous statute is one whose meaning is uncertain and susceptible of more than one meaning; and in a criminal statute, an ambiguity should be resolved in favor of lenity.

*Mazurek v. State,* 10 P.3d 531, 540–41 (Wyo. 2000) (quoting *Pierson v. State,* 956 P.2d 1119, 1125 (Wyo.1998)). We analyze statutes with the objective of ascertaining the legislature's intent, commencing with an inquiry into the ordinary and obvious meaning of the words employed according to their arrangement and connection. *Misenheimer v. State,* 2001 WY 65, ¶ 7, 27 P.3d 273, ¶ 7 (Wyo.2001). "We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia* so that no part will be inoperative or superfluous." *Id.* (quoting *Capshaw v. State,* 10 P.3d 560, 564 (Wyo. 2000)) (citing *Fall v. State,* 963 P.2d 981, 983 (Wyo.1998)). We will not construe a statute in a way that leaves any portion meaningless or produces an absurd result. *Mazurek,* 10 P.3d at 541; *Pierson,* 956 P.2d at 1125.

[¶ 7] Nelson contends that Wyo. Stat. Ann. § 31–4–103 requires only owners to maintain liability coverage and does not place a similar duty on mere operators. He points to the language of subsection (a) of § 31–4–103, which refers only to owners when imposing the liability or bond requirement on motor vehicles operated within the state. Nelson claims that subsection (b) exists only because of subsection (a) and cannot extend the scope of subsection (a). Since subsection (a) does not refer to the operator of a motor

vehicle, Nelson concludes that the language of subsection (b) cannot, therefore, be used to bootstrap a charge of violating subsection (a). He also argues that if we were to find the statutory language ambiguous, then the rule of lenity requires an interpretation of § 31–4–103 consistent with his position.

[¶ 8] The language of § 31–4–103 is clear and unambiguous. As noted, subsection (b) states: "... Any operator or owner of a motor vehicle required to be registered who is not able to demonstrate evidence of compliance with subsection (a) of this section may be charged with violating that subsection." This phrase quite clearly states that the operator of a motor vehicle may be charged under subsection (a). The legislature's failure to include the word "operator" within the text of subsection (a) does not affect the clear import of that statement.[1] Nelson's interpretation of the statute violates one of the cardinal principals of statutory interpretation: Statutes will not be read so as to render any part inoperative or superfluous. *Capshaw*, 10 P.3d at 564. If we accept Nelson's or the district court's reading of § 31–4–103, then the cited clause from subsection (b) would have no meaning whatsoever. The only interpretation that would give effect to the language of both subsections (a) and (b) is to accept the plain meaning of the words in the phrase "any operator ... not able to demonstrate evidence of compliance with subsection (a) of this section may be charged with violating that subsection," and recognize that operators, in addition to owners, of a motor vehicle may be charged for failure to maintain the appropriate liability insurance or to post the requisite bond.

[¶ 9] This conclusion does not violate our tenet that penal statutes are to be strictly construed and that any ambiguities are resolved in favor of leniency. Long ago we noted:

"All statutes, whether remedial or penal, should be construed according to the apparent intention of the legislature, to be

gathered from the language used, connected with the subject of legislation, and so that the entire language shall have effect, if it can, without defeating the obvious design and purpose of the law. And in doing this, the application of common sense to the language is not to be excluded.... This rule is not inconsistent with the principle, that penal statutes are to be construed strictly. By this is meant only, that they are not to be so extended, by implication, beyond the legitimate import of the words used in them, as to embrace cases or acts not clearly described by such words, and so as to bring them within the prohibition or penalty of such statutes.

*State v. Scott*, 35 Wyo. 108, 143–44, 247 P. 699, 710 (Wyo.1926) (quoting *Rawsom v. State*, 19 Conn. 291 at 292 (Conn.1848)). Interpreting the plain language of subsection (b) to include operators of motor vehicles within the prohibitions of subsection (a) does not extend the scope or reach of the statute beyond the import of the words used therein, nor does it result in the statute embracing causes or acts not clearly described by the statute. The statute seeks to prohibit the operation of motor vehicles on the roadways of Wyoming in the absence of the proper means to cover the potential financial costs to third parties of doing so. The interpretation espoused by Nelson and apparently accepted by the district court would have rendered a portion of the statute inoperative, and excluded from the ambit of the statute's prohibitions actors (operators of motor vehicles), which the legislature clearly intended to cover.

## CONCLUSION

[¶ 10] Pursuant to the plain language of Wyo. Stat. Ann. § 31–4–103, operators and owners of motor vehicles can be charged with violating the requirements set forth in subsection (a). Accordingly, we reverse the district court's decision and reinstate the judg-

---

1. In light of the statute's construction around the terms "owner" and "operator," the only ambiguity that may exist in the statute arises out of the legislature's use of the terms "operator" and "driver" in subsection (b). However, any ambi- guity that may be created by the use of these terms does not affect our decision and may, in any event, be more indicative of poor draftsmanship than of any substantive meaning.

ment and sentence imposed by the justice court of Crook County.