2003 WY 156

**Tucker James BUSH, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–218.

Supreme Court of Wyoming.

Dec. 2, 2003.

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Mr. Roden.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Senior Assistant Attorney General. Argument by Ms. Cooley.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, Tucker James Bush (Bush), challenges the district court's sentence ordering him to pay $9,744.00 in restitution to the victim of his crime. Bush entered a plea of guilty to stealing a 1988 Chevrolet pickup from the victim, parts from which he and his girlfriend, Nikki Jo Sparby (Sparby), used to rebuild her 1991 GMC pickup that she had damaged while driving drunk. It is his contention that the district court substantially overvalued the pickup by setting restitution in an amount that allowed the victim to rebuild it piece by piece. We will hold that the restitution order exceeds the district court's legislatively authorized sentencing authority. Thus, we reverse and remand for additional proceedings consistent with this opinion.

## ISSUES

[¶ 2] Bush raises this issue:

Did the district court err when it ordered [Bush] to pay restitution to the victim for rebuilding his stolen 1988 vehicle, including labor costs, updating the transmission, and replacement parts, instead of setting the amount of restitution at the fair market value of the 1988 vehicle at the time it was stolen?

The State poses two issues for our consideration:

I. Whether this Court has jurisdiction to hear this appeal, as [Bush] knowingly and voluntarily waived the right to appeal his sentence, including restitution?

II. Whether the district court abused its discretion in its award of restitution to the victim?

## FACTS

[¶ 3] The issues raised in this appeal arise from a plea bargain agreement that contained this language:

The Defendant has been charged with the following offenses: Count I—Wrongful Taking or Disposing of Property (concealing/disposing) Valued at $500.00 or More, in violation of Wyoming Statute § 6–3–403(a)(i)(b), a felony; and Count II—Conspiracy to Wrongfully Take or Dispose of Property Valued at $500.00 or More, in violation of Wyoming Statute § 6–1–303(a) and § 6–3–403(a)(i)(b), a felony.

## *AGREEMENT*

In consideration of the mutual terms, covenants and conditions of this Statement of Agreement, the respective parties agree with one another and respectfully submit to this Honorable Court as follows:

1) The Defendant will enter a plea of guilty to Count I of the Felony Information: Wrongful Taking or Disposing of Property (concealing/disposing) Valued at $500.00 or More, and establish a factual basis for said plea of guilty.

2) After the Court has accepted the Defendant's plea of guilty to Count I and entered the guilty plea of record, the State will then move the Court to dismiss Count II of the Felony Information.

3) There is no agreed upon recommendation to the Court regarding sentencing; the respective parties would be free to recommend to the Court whatever sentence they deem to be just under the circumstances of this case; Defendant shall pay restitution as ordered by the Court and determined by the State Department of Corrections, Field Services Division.

4) As the plea of guilty herein is based upon this Agreement and the mutual consideration contained in the Agreement itself, the Defendant will not file any post guilty plea/conviction motions, request(s) for sentence reduction, appeals, or post conviction relief petitions.

5) This agreement will be disclosed and recommended to the Court pursuant to Rule 11 of the Wyoming Rules of Criminal Procedure.

6) The above recitation constitutes the entire agreement between the respective parties.

[¶ 4] A prison sentence was imposed, but suspended, and Bush was given a split sentence with probation. At the hearing on Bush's change of plea, the subject of restitution came up only briefly and almost as an afterthought, although it was made clear to Bush that the sentence to be imposed was a matter within the discretion of the district court.[1]

[¶ 5] At the sentencing hearing, the incarceration portion of the sentence was imposed, but restitution was set to be done another day. Eventually, a hearing was held to determine the amount of restitution to be paid by Bush to the victim. The amount was set at $9,744.00 ($8,954.00 owed jointly and severally with Sparby, the remainder was owed individually by Bush). We will set out the restitution order in detail and begin by

---

**1.** More specifically, the district court warned: "Now I've already mentioned this once. If I accept your plea, the sentence that is imposed in your case is entirely within my discretion. After that sentence is imposed you won't be able to change your mind, you won't be able to appeal, and you'll have to accept that sentence, even if you think it's unfair or too harsh."

noting the district court's apt description of this case as one "involving the theft and subsequent dismantling of a 1988 Chevrolet Pickup, . . . and the combining of many of said parts with a wrecked 1991 GMC Pickup, and the victim representing the 1988 Chevrolet Pickup to have unique and special value to him and the victim wishing to rebuild the 1988 Chevrolet Pickup and restore it to its former condition. . . ." The district court then went on to make these findings and conclusions:

1. The test which is to be applied in this particular matter is the one set forth in W.S. § 7–9–103, specifically relating to determination of restitution amounts owed, which directs the Court to fix a reasonable amount as restitution owed to each victim for actual pecuniary damage, and this is the touchstone that the Court will apply in this case.

2. Pecuniary damage means all damages which a victim could recover against a defendant in a civil action arising out of the same facts or event, including damages for wrongful death. It does not include punitive damages, damages for pain and suffering, mental anguish and loss of consortium.

3. As the Court pointed out in the companion case involving co-defendant Sparby (*State v. Sparby*, Criminal case # 3759) this is not simply a case involving the theft of a motor vehicle; rather, the facts of this criminal action involve co-defendant Sparby knowing that the 1998[sic] Chevrolet Pickup was stolen. Ms. Sparby paid money for the victim's stolen vehicle, knowing she wasn't going to get a good title. [Bush] eventually figured this out and further, was advised by Ms. Sparby that the 1988 Chevrolet Pickup was, in fact, stolen. The fact that someone else stole the 1988 Chevrolet Pickup and sold it to Ms. Sparby does not give rise to any claim of unjust enrichment.

4. Further, this case involves the theft of a vehicle for its parts and as the parts are worth more than the whole in this motor vehicle theft, a jury could reasonably award a damage amount that exceeds the book value of the 1988 Chevrolet Pickup at the time of the theft. Book value of the stolen 1988 Chevrolet Pickup at the time of its theft, however, is not the appropriate value for the determination of restitution in this case.

5. The Court finds that $8,700.00 is an appropriate restitution value for reconstruction labor in rebuilding the 1988 Chevrolet Pickup, and that $4,434.00 is an appropriate value for the restitution of replacement parts. Further, the sum of $750.00 is a reasonable sum for transportation of vehicle and parts back to the victim's residence in Longmont, Colorado. The total of these amounts is $13,884.00.

6. In the appropriate case and by reason of the wording of the statute, attorney's fees could be awarded but attorney's fees are not appropriate in this case, and therefore, the requested $1,100 claim for attorney's fees is disallowed.

7. As parts from the victim's 1988 Chevrolet Pickup were combined with parts from the wrecked 1991 GMC Pickup, the Court will grant a credit in favor of [Bush] to be deducted from the restitution figure set forth in paragraph numbered 5 herein, and in this regard, a credit of $4,200.00 shall be given for the 1991 GMC Pickup parts.

We note that a mathematical error occurred in the district court's calculation, and the restitution amount should have been set at $9,644.00. Because we reverse and remand for further proceedings, this error is of no consequence, but we did not want the miscalculation to appear to have gone unnoticed.

## DISCUSSION

### Waiver of Right to Appeal

[¶ 6] The threshold question is whether Bush's waiver of right to appeal encompasses the right to appeal the district court's determination of restitution. The State's contention is that the waiver was plenary and bars this appeal. It is established that a defendant may waive his right to appeal, so long as that waiver is knowing and voluntary. *United States v. Hernandez,* 134 F.3d 1435, 1437 (10th Cir.1998). However, the sentence imposed in such a circumstance must be within that which is authorized by statute. *See United States v. Glass,*

15 Fed. Appx. 621 (10th Cir.2001); *United States v. Baeza*, 16 Fed. Appx. 973 (10th Cir.2001); *United States v. Neill*, 17 Fed. Appx. 743 (10th Cir.2001); and Kristine Cordier Karnezis, Annotation, *Validity and Effect of Criminal Defendant's Express Waiver of Right to Appeal as Part of Negotiated Plea Agreement*, 89 A.L.R.3d 864 (1979 and 2002 Supp.).

[¶ 7] We are able to readily conclude that Bush knowingly and voluntarily waived his right to appeal, in a general sense. However, he did not waive his right to appeal a sentence that exceeded the punishment prescribed by law:

> The source of the legislature's power to limit judicial authority as to sentencing is found in the constitutional separation of powers. The legislative branch has the exclusive power to define crimes and to prescribe punishments for those crimes. *Billis v. State*, 800 P.2d 401, 412–15 (Wyo. 1990). Consequently, a court may only impose a sentence of incarceration that falls within the minimum and maximum punishment prescribed by statute. *Williams v. State*, 692 P.2d 233, 235 (Wyo. 1984).

*Daugherty v. State*, 2002 WY 52, ¶ 15, 44 P.3d 28, 34 ¶ 15 (Wyo.2002).

[¶ 8] In *Ryan v. State*, 988 P.2d 46, 62–63 (Wyo.1999), we iterated our definition of an illegal sentence:

> "An illegal sentence is one which exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates constitutions or the law." *Sanchez v. State*, 982 P.2d 149, 150 (Wyo. 1999) (*citing Duran v. State*, 949 P.2d 885, 887 (Wyo.1997)). The determination of whether a sentence is illegal is made by reference to the authorizing statute or applicable constitutional provisions and is, therefore, a matter of statutory interpretation. Interpretation of statutes is a question of law, which we review de novo. *French v. Amax Coal West*, 960 P.2d 1023, 1027 (Wyo.1998); *Chevron U.S.A., Inc. v. State*, 918 P.2d 980, 983 (Wyo.1996).

**Was the Restitution Order a Legal Sentence**

[¶ 9] Appellate review of restitution is confined to a search for procedural error or a clear abuse of discretion. *Brown v. State*, 2003 WY 72, ¶ 9, 70 P.3d 238 ¶ 9 (Wyo.2003); and *see Penner v. State*, 2003 WY 143, ¶ 7, 78 P.3d 1045, ¶ 7 (Wyo.2003). Moreover,

> The distinction between whether a defendant is making a factual challenge to an order of restitution or whether he is challenging the authority of the trial court to make a particular award of restitution is an important one. Challenges to the *factual* basis of an award of restitution can be waived in certain circumstances by the defendant's voluntary actions, such as entering into a plea agreement, and then failing to make any objection at sentencing, as occurred in *Meerscheidt. See also Aldridge v. State*, 956 P.2d 341, 343 (Wyo. 1998). Outside the context of a plea agreement, the failure to object to a factual determination in the awarding of restitution results in an appellate review for plain error. *See Gayler v. State*, 957 P.2d 855, 857 (Wyo.1998). In contrast, a challenge by a defendant to the authority of a trial court to make a particular award of restitution is reviewed on appeal under a de novo statutory interpretation standard whether or not the defendant objected or entered into a plea agreement. *Meerscheidt*, 931 P.2d at 223–224, 226–227. While not explicit in our decision in *Meerscheidt*, the reason for conducting a de novo review under such circumstances is that a court has only that authority to act which is conferred by the subject statute. *Aldridge*, 956 P.2d at 343. ("The trial court's exercise of discretion in ordering restitution does not spring from any inherent authority. Rather that exercise, like our review, is circumscribed by the statutes empowering the trial court to order restitution.") (citation omitted); *see also Horn v. State*, 556 P.2d 925, 927 (Wyo. 1976) ("[A] penal statute cannot be extended by implication or construction to persons or things not expressly brought within its terms, nor to cases not within the letter of the statute. . . ."). An order of

restitution by a trial court which exceeds the authority granted by the statutes governing restitution would be void, and a void order may be challenged at any time. *People v. Evans,* 122 Ill.App.3d 733, 78 Ill.Dec. 50, 461 N.E.2d 634, 639 (1984); *see also State ex rel. TRL by Avery v. RLP,* 772 P.2d 1054, 1057 (Wyo.1989).

*Merkison v. State,* 996 P.2d 1138 at 1141–42 (Wyo.2000) (emphasis in original).

[¶ 10] We perceive Bush's argument to be both a challenge to the factual basis for the order of restitution, as well as one which challenges the authority of the district court to impose restitution such as that ordered.

 [¶ 11] Restitution is described by Wyo. Stat. Ann. § 7–9–103 (LexisNexis 2003):

### § 7–9–103. Determination of amount owed; execution.

(a) As part of the sentencing process including deferred prosecutions under W.S. 7–13–301, in any misdemeanor or felony case, the prosecuting attorney shall present to the court any claim for restitution submitted by any victim.

(b) In every case in which a claim for restitution is submitted, the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity, and shall include its determination of the pecuniary damage as a special finding in the judgment of conviction or in the order placing the defendant on probation under W.S. 7–13–301. In determining the amount of restitution, the court shall consider and include as a special finding, each victim's reasonably foreseeable actual pecuniary damage that will result in the future as a result of the defendant's criminal activity. A long-term physical health care restitution order shall be entered as provided in W.S. 7–9–113 through 7–9–115.

(c) The court shall order the defendant to pay all or part of the restitution claimed or shall state on the record specific reasons why an order for restitution was not entered. If the court determines that the defendant has no ability to pay and that no reasonable probability exists that the de-

fendant will have an ability to pay in the future, the court shall enter specific findings in the record supporting its determination.

(d) Any order for restitution under this chapter constitutes a judgment by operation of law on the date it is entered. To satisfy the judgment, the clerk, upon request of the victim or the district attorney, may issue execution in the same manner as in a civil action.

(e) The court's determination of the amount of restitution owed under this section is not admissible as evidence in any civil action.

(f) The defendant shall be given credit against his restitution obligation for payments made to the victim by the defendant's insurer for injuries arising out of the same facts or event.

A part of the analytic process for construing a statute is this:

> Applicable general principles of statutory construction include: if the language is clear and unambiguous, we must abide by the plain meaning of the statute; if a statute is ambiguous, we may resort to general principles of construction; an ambiguous statute is one whose meaning is uncertain and susceptible of more than one meaning; and in a criminal statute, an ambiguity should be resolved in favor of lenity.

*Mazurek v. State,* 10 P.3d 531, 540–41 (Wyo.2000) (quoting *Pierson v. State,* 956 P.2d 1119, 1125 (Wyo.1998)). We analyze statutes with the objective of ascertaining the legislature's intent, commencing with an inquiry into the ordinary and obvious meaning of the words employed according to their arrangement and connection. *Misenheimer v. State,* 2001 WY 65, ¶ 7, 27 P.3d 273, ¶ 7 (Wyo.2001). "We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in *pari materia* so that no part will be inoperative or superfluous." *Id.* (quoting *Capshaw v. State,* 10 P.3d 560, 564 (Wyo.2000)) (*citing Fall v. State,* 963 P.2d 981, 983 (Wyo.1998)). We will not construe a statute in a way that leaves any portion mean-

ingless or produces an absurd result. *Mazurek,* 10 P.3d at 541; *Pierson,* 956 P.2d at 1125.

*State v. Nelson,* 2002 WY 99, ¶ 6, 49 P.3d 185, ¶ 6 (Wyo.2002).

[¶ 12] By its own words, the governing statute articulates that restitution shall be fixed at a "reasonable amount." The district court is required to determine the "pecuniary damage" suffered by the victim. "Pecuniary damage" means: "[A]ll damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, including damages for wrongful death. It does not include punitive damages and damages for pain, suffering, mental anguish and loss of consortium[.]" Wyo. Stat. Ann. § 7–9–101(a)(iii) (LexisNexis 2003).

[¶ 13] With respect to restitution, the *ABA Standards for Criminal Justice: Sentencing* (3rd ed.1994), provides this guidance:

### Economic Sanctions

**Standard 18–3.15 Restitution or reparation**

(a) For an offense that resulted in a victim's personal injury or loss of money or property, the legislature should authorize sentencing an individual or an organization to make restitution to the victim or to compensate the victim for losses suffered. The legislature should authorize a sentencing court to order payment to a fund for future disbursement if the identities of the victims or the amounts of their claims are not ascertained at the time of sentencing.

(b) In the event of injury or loss that the offender has special capacity to restore or repair, the legislature should authorize sentencing an individual or organization to perform such reparations.

(c) The agency performing the intermediate function should guide sentencing courts in the appropriate use of restitution and reparation.

(i) The sanction should be limited to the greater of the benefit to an offender or actual loss to identified persons or entities. Claimants seeking general, exemplary, or punitive damages, or asserting losses that require estimation of consequential damages, such as pain and suffering or lost profits, should be limited to their civil remedies.

(ii) The agency should provide that sentencing courts may require offenders to pay the full amount of the sanction forthwith or, taking into account the financial circumstances of an offender, to pay the amount in scheduled installments.

(d) The legislature should enact appropriate provisions to integrate the criminal sanction of restitution or reparation with a victim's right of civil action against an offender. The legislature should authorize sentencing courts to allow a defense or plea in bar, which might have been raised in a civil proceeding by a victim against an offender, as appropriate and relevant to liability imposed in the criminal proceeding.

(e) The legislature should authorize a sentencing court to retain jurisdiction over an offender sentenced to a restitution or reparation sanction until the sanction is satisfied or the sentence is rescinded.

(f) The legislature should place responsibility for enforcement of orders of restitution or reparation on a designated public official. The legislature should authorize that official to enforce the court order by use of any method available to enforce a civil judgment.

As can readily be perceived, Wyoming's restitution statute is largely in consonance with the ABA Standard.

[¶ 14] Wyoming's restitution statute requires that restitution be "reasonable" and that it address the victim's "actual pecuniary damage resulting from the defendant's criminal activity." The determination of "actual pecuniary damage" is usually a fairly simple and direct calculation based on fair market value, or some other similar test. *See generally,* George Blum, Annotation, *Measure and Elements of Restitution to Which Victim is Entitled Under State Criminal Statute,* 15 A.L.R.5th 391 (1993 and Supp.2001). In this instance, the district court did not rely on market value or book value to ascertain an appropriate amount of restitution. Instead, the district court recog-

nized the special value this particular 1988 Chevrolet pickup had to the victim and set the restitution in an amount that would allow him to rebuild a 1988 Chevrolet pickup from "the ground up." The record is clear that it is not possible for the 1988 Chevrolet pickup to be reassembled using its original parts, as many, if not most of them, are gone. The record does not reveal the source of the victim's special attachment to the pickup in question. As a general rule, an individual cannot receive an award of damages for his subjective sense of value about personal property:

> If personal property had a market value, no recovery can be had on the basis of its value to the owner individually, apart from its market value. But if the market value would not be a fair compensation for a personal loss, a plaintiff is sometimes permitted to recover the value of the item to him. Also, it is sometimes provided by statute that the peculiar value to the owner which certain property may have may be deemed to be its value under certain circumstances, such as where the wrongdoer had advance notice of the special value or was guilty of a willful tort.

22 Am.Jur.2D *Damages* § 437 (1988).

> In some cases, the plaintiff is denied all recovery for his claimed injury to those property interests which have no market value on the basis that the plaintiff cannot recover for sentimental or fanciful losses. But the rule denying recovery for sentimental value of personal property is not applicable if the items have primarily sentimental value. Sentimental value may be associated with feelings generated by such items as family heirlooms, photographs, and papers, handicrafts, and trophies, as these items are generally capable of generating sentimental feelings. But the courts will not allow a substantial recovery for injuries to property interests in things when the specific owner has an atypical sentimental connection with the item involved.

22 Am.Jur.2D *Damages* § 439 (1988).

[¶ 15] In this instance the record will not support a finding that the 1988 Chevrolet pickup involved in this case had a "special," "unique," or "sentimental" value in an objective sense, or even in a subjective sense vis-à-vis the victim. In addition, we conclude that a 1988 Chevrolet pickup has a readily ascertainable fair market value that equates with the statutory directive that the victim of a crime be recompensed for "actual pecuniary loss." The restitution statute provides for a civil action to collect such "special" damages as those sought by this victim. Because issues such as whether the pickup was special, unique, or of sentimental value, and what that value might be, if any, are very difficult fact questions, they are better suited for civil litigation and jury resolution.

### CONCLUSION

[¶ 16] Based on this analysis, we hold that Bush did not waive his right to appeal his sentence to the extent that the sentence was not authorized by the restitution statute. Furthermore, we hold that the district court did impose an illegal sentence in fashioning the restitution award. This matter is remanded to the district court with directions that restitution be set in an amount that reasonably compensates the victim for his actual pecuniary damage, *i.e.,* the fair market value of his 1988 Chevrolet pickup.

LEHMAN, Justice, dissenting, with whom KITE, Justice, joins.

[¶ 17] I must respectfully dissent.

[¶ 18] The majority finds the order of restitution in this matter constitutes an illegal sentence. The basis of the majority's finding appears to be that the majority does not agree that the "pecuniary damages" in this case can be something other than the pickup's readily ascertainable fair market value at the time of theft. The majority thus concludes that the amount of restitution ordered by the district court is not reasonable. In reaching this conclusion, the majority has substituted its own determination of reasonable restitution for that of the district court.

[¶ 19] As the majority stated, our review of an order of restitution "is confined to a search for procedural error or a clear abuse of discretion." ¶ 9 (citing *Brown v. State,* 2003 WY 72, ¶ 9–70 P.3d 238, ¶ 9 (Wyo.

2003)). When considering an abuse of discretion, we must determine whether the district court could reasonably conclude as it did. *Herrera v. State*, 2003 WY 25, ¶ 10, 64 P.3d 724 ¶ 10 (Wyo.2003). We look to see whether the district court exercised sound judgment with regard to what is right under the circumstances without doing so arbitrarily or capriciously. *Brown*, ¶ 9. Specifically, the applicable statutes require us to determine whether the damages awarded could have been recovered in a civil action arising out of the same facts or events. See Wyo. Stat. Ann. § 7–9–103(b); Wyo. Stat. Ann. § 7–9–101(iii); *Alcaraz v. State*, 2002 WY 57, ¶¶ 14–15, 44 P.3d 68, ¶¶ 14–15 (Wyo.2002) (holding that a portion but not all of the cost of video surveillance equipment could be allocated to the defendant charged with felony larceny).

[¶ 20] The oral pronouncements from the bench as well as the restitution order indicate that the district court was cognizant of this requirement and sought to ascertain the damages accordingly. Indeed, I find that the amount of restitution ordered in this case falls within the confines of what could have been recovered in a civil trial. Therefore, we must not substitute our judgment of reasonable restitution for that of the district court. I believe the district court could reasonably conclude as it did and did so without acting arbitrarily or capriciously, and I would therefore uphold the district court's restitution order.

[¶ 21] As was the case in *Alcaraz*, neither party suggests a civil cause of action which could arise out of the same facts. *Alcaraz*, at ¶ 8. Similarly, however, an applicable civil cause of action would be conversion. Conversion is a distinct act of dominion wrongfully executed over one's property in denial of his right or inconsistent with it. *Id*. The proper measure of damages in a conversion case can include various components. For instance, in a conversion case involving a road grader, the plaintiff was awarded the return of his road grader, $10,000 to repair the engine, $400 to replace the cutting edge and batteries, $900 for tire replacement, $4,600 for the cost of attempted recovery of the grader, and $67,500 for the loss of use of

his grader. *Cross v. Berg Lumber Co.*, 7 P.3d 922, 931 (Wyo.2000). As can be seen, the plaintiff was given back his road grader and also awarded an allowance to repair his grader.

[¶ 22] We have further indicated that the injured party should receive full compensation for his actual losses whether it is by repair to the property or some other measure. *Alcaraz*, at ¶ 8. In conversion cases, damages are generally the sum of money necessary to compensate the plaintiff for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong. *Alcaraz*, at ¶ 8. Indeed, special damages may be recovered in an action for conversion for any injury proximately resulting from the conversion. *Id*. The question then becomes the valuation of the injured party's actual damages.

[¶ 23] In making this determination, I consider what we have said regarding both restitution and civil damages in general. The purpose of an order of restitution is to compensate the victim for his loss. In describing this purpose we have said:

> The goal in awarding damages is to make the injured party whole to the extent that it is possible to measure an injury in terms of money. 22 Am.Jur.2d *Damages* § 26 (1988). This occurs when the victim is in the same financial position he would have been in had the wrong not been committed. *Id*. We have said, "In computing damages, 'the primary objective [is] to determine the amount of loss, applying whatever rule is best situated to that purpose.'" *Cross*, 7 P.3d at 933 (quoting *O's Gold Seed Company v. United Agri–Products Financial Services, Inc.*, 761 P.2d 673, 676 (Wyo.1988)).

*Alcaraz* at ¶ 15.

[¶ 24] As can be seen by the above quote, the determination of restitution based on the amount of loss is not an exact science. Rather, this determination can be reached through the application of different rules. The appropriate measurement will vary depending on the circumstances. We have stated, "[i]n cases where property is destroyed, the proper damage amount is the item's market value at the time it was de-

stroyed. The retail market value is used when the victim intends to replace the property." *Meerscheidt v. State*, 931 P.2d 220, 226 (Wyo.1997) (citation omitted).

[¶ 25] In various civil actions we have also recognized the varying measures of damages. We have said, "[t]he measure of damages to property which can be repaired and substantially restored to its former condition is the reasonable cost of repair or restoration." *Kirby Bldg. Sys. v. Mineral Explorations Co.*, 704 P.2d 1266, 1269 (Wyo. 1985) (quoting *South Cheyenne Water & Sewer Dist. v. Stundon*, 483 P.2d 240, 243 (Wyo.1971)). Additionally,

> In *Meredith GMC, Inc. v. Garner*, 78 Wyo. 396, 328 P.2d 371, 373–374 (1958), we discussed the issue of how damages to a motor vehicle which is not totally destroyed are to be calculated. Surveying Wyoming precedent and various scholarly works, we concluded that damages could be calculated by using either the cost-of-repairs method or the decrease-in-market-value method. We indicated that the choice between these two methods should be determined "as the occasion may require." *Id.*, 328 P.2d at 374.

*Aetna Casualty & Sur. Co. v. Langdon*, 624 P.2d 240, 242 (Wyo.1981). It thus appears that the method for determining the damages varies depending on the circumstances, and there is no absolute rule. Therefore, the district court should be given wide latitude in making such a determination.

[¶ 26] In this instance, the district court held a hearing regarding restitution. The testimony was specific and detailed relating to the damages incurred and the work and parts it would take to restore the pickup. While this testimony came mostly from the victim, "where an owner has sufficient knowledge to establish the value of his own property, he may properly serve as a witness." *Brown*, ¶ 10. The victim in this case is a certified automobile mechanic and thus situated to have knowledge of these values. The trial court clearly considered the testimony regarding the value of the damage incurred to the victim's pickup and the cost of needed repairs. The district court offset this amount with a credit for the parts that the victim could sell because they would not be needed or they were duplicate parts. The trial court additionally ordered that Bush's obligation be joint and several with Sparby's ordered restitution to assure that the victim would not receive a windfall.

[¶ 27] A review of the testimony and the thorough considerations of the district court clearly indicates to me that the restitution order was not an illegal order. The amount of restitution fixed by the trial court was supported by evidence sufficient to afford a reasonable basis for estimating the loss and was an amount that could be awarded in a civil suit. See *Brown*, ¶ 9. The majority bases much of its reasoning on the district court's mention of a unique and special value to the victim. My review of the testimony and the order indicates that this does not appear to be a significant basis of the district court's determination. It appears to me that the district court was not compensating the victim for this "subjective sense of value." Rather, it appears the district court simply sought to allow the victim to be made whole through the repair of his truck. Considering the circumstances, such a determination is reasonable.

[¶ 28] Perhaps the definition of what is reasonable will differ from one person to another, but under no circumstances can that difference alone form the basis of an abuse of discretion. In this case, the majority simply did not agree with the district court's method of calculating reasonable damages. However, this does not mean the district court abused its discretion and it certainly does not mean that there was an illegal sentence. As long as the district court's determination was reasonable and in an amount that could be awarded in a civil action it is not arbitrary or capricious and should be upheld.